GERZESKI v DEPARTMENT OF STATE HIGHWAYS

FOUCHIA v DEPARTMENT OF STATE HIGHWAYS

Docket Nos. 58322, 58321. Argued June 8, 1977 (Calendar Nos. 13, 12).—Decided July 24, 1978. Rehearing denied *post*, p 956.

Delores Gerzeski, administratrix of the estate of Lee Gerzeski, deceased, and Elaine Fouchia, administratrix of the estates of Harley Fouchia and George Fouchia, deceased, brought complaints for wrongful death against the Department of State Highways. The three decedents drowned in an artificial pond created and owned by the Department of State Highways. The Court of Claims, Ross W. Campbell, J., found that the defendant had created and maintained a nuisance in fact and that governmental immunity did not apply to the defendant's actions in creating the pond, and granted judgments for the plaintiffs. The Court of Appeals, McGregor, P.J., and N. J. Kaufman, J. (T. M. Burns, J., dissenting), reversed on the ground that the instant cases fell within the kind of nuisance for which governmental immunity is a defense (Docket Nos. 22209, 22210). Plaintiffs appeal. *Held:* The judgment of the Court of Appeals is reversed and the judgment of the Court of Claims reinstated.

Justice Fitzgerald, joined by the Chief Justice and Justice Levin, agreed with Justice Moody's analysis (next) insofar as it

---

REFERENCES FOR POINTS IN HEADNOTES

[1–10] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 27.

57 Am Jur 2d, Municipal, School, and State Tort Liability § 298 *et seq.*

58 Am Jur 2d, Nuisances § 228 *et seq.*

72 Am Jur 2d, States, Territories, and Dependencies § 99 *et seq.*

Nature and status of rule as to municipal immunity from liability for torts. 60 ALR2d 1198.

[3] 58 Am Jur 2d, Nuisances §§ 136–141.

[4] 58 Am Jur 2d, Nuisances §§ 32–34.

[7, 8, 10] 58 Am Jur 2d, Nuisances §§ 12, 13.

explains the different methods of classifying nuisance for evidentiary and liability considerations. As an evidentiary question, whether the artificial pond was a nuisance is a question of fact. However, they did not agree with Justice Moody's analysis on the liability question. Governmental immunity is not a bar to a tort action sounding in nuisance. Although the Court of Claims judge's determination that the conduct giving rise to the nuisance was intentional was accurate, that determination was not necessary for a finding of governmental liability.

Justice Moody, with Justice Williams concurring, wrote:

1. The distinction between the terms nuisance per se and nuisance in fact relates to the nature of proof required and to whether a nuisance is created as a matter of law or as a matter of fact. Once a nuisance per se has been established by proofs, it is a nuisance as a matter of law. Whether a particular thing or act creates a nuisance in fact under the circumstances presents a question for the trier of fact.

2. An intentional nuisance is created by conduct of the creator of the nuisance which was intended to bring about the conditions which are found to be a nuisance in fact. To hold the government immune from the consequences of its intentional acts which create a nuisance would be unconscionable. Accordingly, the judicially created bar of governmental immunity is inapplicable when a trier of fact determines, as in the instant case, that the alleged nuisance was intentional, *i.e.*, that the governmental agency intended to bring about the conditions which are in fact found to be a nuisance, rather than negligently creating the conditions.

The judgment of the Court of Appeals is reversed and the judgment of the Court of Claims reinstated.

Justice Ryan, joined by Justice Coleman, dissenting, would affirm the judgment of the Court of Appeals:

1. These causes of action arose while the former governmental immunity statute, which was declared unconstitutional by the Court, was in effect, but before the Court abolished judicial or common-law governmental tort immunity prospectively except for any cases then pending in which an express challenge to the common-law defense of governmental immunity had been made and preserved. The plaintiffs in the instant cases argued only that the governmental immunity statute was unconstitutional and that there was a "nuisance" exception to the statute. The record is utterly devoid of an express challenge to common-law governmental immunity, and therefore the

holding abolishing common-law immunity is inapplicable to the cause of action asserted here.

2. The judicial exceptions to the common-law doctrine of governmental immunity are extremely narrow and embrace just two types of factual circumstances: where the state creates or maintains a "nuisance per se", which is a nuisance without regard to the care with which the activity is conducted or the circumstances under which the condition exists; and "intruding" nuisances where an instrumentality from government-owned land directly trespasses or "intrudes" onto private property and effectively deprives the owner of useful possession, constituting a public taking of private property.

3. The pond in the instant case is not a nuisance within the established exceptions to governmental immunity from tort liability which extend only to "per se" and "intruding" nuisances.

68 Mich App 91; 241 NW2d 771 (1976) reversed.

### DECISION OF THE COURT

1. NUISANCE—GOVERNMENTAL IMMUNITY.

Judgment for plaintiffs against the Department of State Highways in the Court of Claims in actions for wrongful death by drowning in an artificial pond which was found by the trial judge to be an intentional nuisance was proper: because governmental immunity is not a bar to a tort action sounding in nuisance, per Fitzgerald, J., Kavanagh, C.J., and Levin, J.; because governmental immunity is not a defense in an action for an intentional nuisance, per Blair Moody, Jr., and Williams, JJ.

### OPINION BY FITZGERALD J.

### KAVANAGH, C.J., and LEVIN, J.

See headnote 3.

2. NUISANCE—STATES—TORTS—GOVERNMENTAL IMMUNITY.

*Governmental immunity is not a bar to a tort action sounding in nuisance; the nuisance need not be found to be caused by intentional conduct to support a finding of governmental liability.*

### CONCURRING OPINION BY BLAIR MOODY, JR., J.

### WILLIAMS, J.

3. NUISANCE—PER SE—IN FACT—QUESTION OF LAW—QUESTION OF FACT.

An alleged nuisance per se which has been established by proofs

is a nuisance as a matter of law; however, whether a particular thing or act creates a nuisance in fact presents a question for the trier of fact.

4. NUISANCE—STATES—TORTS—GOVERNMENTAL IMMUNITY.

*The judicially created bar of governmental immunity from liability for torts is inapplicable where the trier of fact determines that an alleged nuisance was intentional, i.e., that the governmental agency intended to bring about the conditions which are in fact found to be a nuisance, rather than negligently creating the conditions.*

DISSENTING OPINION BY RYAN, J.

COLEMAN, J.

5. STATES—TORTS—GOVERNMENTAL IMMUNITY—COMMON LAW.

*The common-law governmental immunity to tort liability is a valid defense, absent an express challenge to it, in a case arising prior to November 23, 1976, when it was prospectively abolished by a decision of the Supreme Court.*

6. STATES—TORTS—GOVERNMENTAL IMMUNITY—STATUTES.

*The Legislature has waived the state's immunity from tort liability for certain injuries caused by defective highways, negligent operation of government-owned vehicles, and dangerous or defective conditions of public buildings (MCL 691.1402, 691.1405, 691.1406; MSA 3.996[102], 3.996[105], 3.996[106]).*

7. NUISANCE—STATES—TORTS—GOVERNMENTAL IMMUNITY—COMMON LAW.

*A judicial exception to the state's immunity from tort liability has been carved out where the state creates or maintains a "nuisance per se", that is, causes activities or conditions which are nuisances without regard to the care with which they are conducted or the circumstances under which they exist.*

8. NUISANCE—STATES—TORTS—GOVERNMENTAL IMMUNITY.

*The state is not vested with an absolute right to use its property in any manner it may choose without regard for public persons or the public at large; in the few instances wherein the Legislature or the Supreme Court may label a condition or activity patently unreasonable by its very nature, the state may not raise the shield of sovereign immunity.*

9. NUISANCE—STATES—TORTS—GOVERNMENTAL IMMUNITY—TRESPASS —DUE PROCESS.

*The state cannot properly raise the defense of governmental*

*immunity from tort liability where damage is caused by the direct trespass of a potentially dangerous instrumentality or condition from government-owned land onto private property because the government has effectively publicly taken useful possession of private property (Const 1963, art 10, § 2).*

10. NUISANCE—STATES—TORTS—GOVERNMENTAL IMMUNITY—ARTIFICIAL POND.

*An artificial pond created by the Department of State Highways is not a nuisance within the established exceptions to governmental immunity from tort liability which extend only to "per se" and "intruding" nuisances.*

*Cicinelli, Mossner, Majoros & Alexander, P.C.,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Thomas L. Casey,* Assistant Attorney General, for defendants.

FITZGERALD, J. *(for reversal).* Justice MOODY has aptly analyzed the semantic difficulties inherent in our nuisance case law. We agree with that analysis insofar as it explains the different methods of classifying nuisance for evidentiary and liability considerations. As an evidentiary question, whether or not the artificial pond in which the two children and the father of one of them drowned was a nuisance is a question of fact. The Court of Claims judge, sitting as trier of fact, determined that the pond was both an "attractive nuisance" and an "intentional nuisance" and awarded damages.

On the liability question, we disagree with Justice MOODY's reading of *Buckeye Union Fire Ins Co v Michigan,* 383 Mich 630; 178 NW2d 476 (1970). We do read *Buckeye* for the proposition that governmental immunity is not a bar to a tort action sounding in nuisance. See my opinion in *Rosario v Lansing,* 403 Mich 124; 268 NW2d 230

(1978). In our view, while the Court of Claims judge's determination that the conduct giving rise to the nuisance was intentional was accurate, that determination was not necessary for a finding of governmental liability.

We, too, would reverse the Court of Appeals and reinstate the Court of Claims judgment. No costs, a public question.

KAVANAGH, C.J., and LEVIN, J., concurred with FITZGERALD, J.

BLAIR MOODY, JR., J. The factual background of the present case centers on the Michigan highway department's purchase and use of a piece of property in Lincoln Township, Arenac County. The property was purchased so that soil could be "borrowed" from the area for use in the construction of a portion of highway I-75. As dirt is "borrowed" from an area a "borrow pit" is constructed. In this case, as the pit was constructed dirt was deliberately removed from the path of a pre-existing county drain, referred to as the "Bell drain", thereby permitting water to enter on the west side of the pit and exit on the east edge. The flow of the "Bell drain", a "flowing well" beneath the surface of the borrow pit, and the water level of the surrounding lake combined to fill the pit with water. This created a pond covering approximately 12 acres of land. After the highway construction was completed, the highway department trimmed the edge of the pond with topsoil and seeded the area. The result was an attractive recreational area.

On December 10, 1969, Harley Fouchia, age 12, and Lee Gerzeski, age 10, drowned in the pond after wandering out onto its apparently frozen surface and breaking through the ice near the

point where the drain flowed into the pond. When Harley's mother noticed that the boys were missing, she sent her husband, George, to look for them. In a futile attempt to find and rescue the boys, George Fouchia broke through the ice and drowned. Wrongful death actions alleging attractive nuisance and gross negligence were brought on behalf of the decedents' estates against the Department of State Highways and the State Highway Commission in the Court of Claims. Defendants' motions for summary judgment on governmental immunity grounds were denied by the trial judge on the basis of a finding that suits based upon nuisance were judicially created exceptions to the governmental immunity doctrine.

The Court of Claims judge held that the facts of these cases supported the conclusion that this pond was both an "intentional nuisance" and an "attractive nuisance", and entered judgments in favor of the plaintiffs.

The Court of Appeals majority reversed, stating that the facts presented did not fall within either of two subclasses of nuisance which constitute an exception to governmental immunity, trespass-nuisance and nuisance per se. Thus, plaintiffs' causes of action were barred by the state's assertion of immunity from suit. 68 Mich App 91; 241 NW2d 771 (1976). We granted leave to appeal. 397 Mich 832 (1976).

The issue before the Court involves two questions. The first question presented is whether the determination that a particular act or circumstance creates a nuisance should be treated as a question of law or a question of fact. The second question is what are the perimeters of the judicially created "nuisance" exception to governmental immunity from tort liability.

"There is perhaps no more impenetrable jungle in the entire law than that which surrounds the word 'nuisance' ", Prosser, Torts (4th ed), § 86, p 571. Michigan nuisance case law, addressing the issue of governmental immunity and the judicially created exceptions to that immunity, supports this observation.

In the present case, the Court of Appeals majority found that only two types of nuisances, trespass-nuisance and nuisance per se, fall within the judicially created exception to governmental immunity.[1] This holding was reached because of semantic confusion within our nuisance case law. The semantic puzzle results from a failure to define and clarify the pattern into which the following terms fit: nuisance per se, nuisance in fact or per accidens, intentional nuisance, and negligent nuisance.

The Michigan Supreme Court, in an effort to establish evidence guidelines for jury questions in nuisance cases, quoted the following encyclopedic language from 66 CJS, Nuisances, § 3, pp 733-734, in *Bluemer v Saginaw Central Oil & Gas Service, Inc,* 356 Mich 399, 411; 97 NW2d 90 (1959):

"From the point of view of their nature, nuisances are sometimes classified as nuisances per se or at law, and nuisances per accidens or in fact. A nuisance at law or a nuisance per se is an act, occupation, or structure

---

[1] We need not definitively deal with the category of nuisance cases referred to as trespass-nuisance. The present facts cannot fit within the definitional framework of damage caused by the direct trespass of an instrumentality from government-owned land onto private property or property owned by another governmental agency. *Ferris v Board of Education of Detroit,* 122 Mich 315; 81 NW 98 (1899); *Pound v Garden City School Dist,* 372 Mich 499; 127 NW2d 390 (1964). It should be noted that this type of nuisance fits within the general nuisance in fact category and not the nuisance per se category. The trespass nuisance exception has been carved out by this Court and remains a part of our case law.

which is a nuisance at all times and under any circumstances, regardless of location or surroundings. Nuisances in fact or per accidens are those which become nuisances by reason of circumstances and surroundings, and an act may be found to be a nuisance as a matter of fact where the natural tendency of the act is to create danger and inflict injury on person or property. The number of nuisances per se is necessarily limited, and by far the greater number of nuisances are nuisances per accidens. For this reason whether or not a particular thing or act is a nuisance is generally a question of fact * * * to be determined in the first instance before the term 'nuisance' can be applied to it.

* * *

"The difference between a nuisance per se and one in fact is not in the remedy but only in the proof of it. In the one case the wrong is established by proof of the mere act and becomes a nuisance as a matter of law, in the other by proof of the act and its consequences."

Unfortunately, the bench and the bar have coupled the previously quoted language of *Bluemer* differentiating nuisance per se from nuisance in fact with the following language from *Royston v Charlotte,* 278 Mich 255, 260; 270 NW 288 (1936):

"Acts in the discharge of governmental functions which create a nuisance *per se* do not come within the immunity otherwise accorded. Want of care in maintenance, however, presents the question of negligence only, and not that of a public nuisance, which must rest on inherent danger even under the best of care."

By combining the *Bluemer* and *Royston* cases, courts have arrived at the erroneous all-encompassing conclusion that "nuisances in fact do not survive an otherwise proper claim of governmental immunity". *Buddy v Department of Natural Resources,* 59 Mich App 598, 606; 229 NW2d 865

(1975).[2] The *Royston* determination that a nuisance per se does not come within the immunity otherwise afforded governmental agencies, however, in no way mandates the opposite conclusion that all actions for nuisances in fact cannot survive a governmental immunity defense. Nevertheless, a combination of these two cases has resulted in the interpretation that only an action for nuisance per se survives an otherwise proper claim of governmental immunity.

This conclusion is erroneous for several reasons. First, there is confusion concerning the relationship between the various nuisance categories. To understand the erroneous interpretation reached by the *Buddy* Court, one must analyze the pattern into which the different nuisance categories fall. There are two general categories of nuisance, nuisance per se and nuisance in fact. Traditionally, the division between these categories was predicated on evidentiary considerations. Two subcategories, intentional nuisance and negligent nuisance, fall within the general nuisance in fact category.

The Court in *Royston* concerned itself with only two of the three recognized classes of nuisance

---

[2] Although it is correct that the *Buddy* Court of Appeals panel specifically referred to the case *Buckeye Union Fire Ins Co v Michigan*, 383 Mich 630; 178 NW2d 476 (1970), in reaching the stated conclusion, a careful examination of the *Buddy* case reveals that the connection between the *Royston* and *Bluemer* cases was reached by the Court. See *Buddy, supra,* 600-601. The *Buckeye* case has frequently been cited as supporting both the position that governmental immunity is never a bar to a tort action sounding in nuisance and the position that with the exception of nuisance per se, only nuisances which interfere with real property interests may survive governmental immunity.

We decline to read *Buckeye* to support either proposition. The *Buckeye* case, while involving a nuisance claim against the state, was decided on constitutional grounds that private property shall not be taken without just compensation. Therefore, the *Buckeye* case provides no assistance in answer to the questions presently before the Court.

where personal injury results, nuisance per se and negligent nuisance. Its consideration was limited to "want of care in maintenance". The decision did not address itself to a consideration of the intentional nuisance category. The *Royston* Court did not expand its determination by use of the term "nuisance in fact". Accordingly, there is no basis for the conclusion that all actions for nuisances in fact, including intentional nuisances, do not survive an otherwise proper claim of governmental immunity.

Furthermore, the *Bluemer* case did not address any governmental immunity issue, nor was the quotation previously cited from *Bluemer* intended to imply that this Court recognizes but two nuisance classifications. In *Bluemer*, the Court was merely establishing that, from an evidentiary point of view, nuisances fall into two distinct categories: nuisance per se, which once established by proof becomes a nuisance as a matter of law, and nuisance in fact, where circumstances and surroundings present questions of fact which the trier of fact may determine create a nuisance as a matter of fact. Thus, when used in conjunction with each other, the legal terms nuisance per se and nuisance in fact relate only to the nature of proof required and to whether a nuisance is created as a matter of law or as a matter of fact.

This conclusion is buttressed by the Court's language in *Brown v Nichols,* 337 Mich 684, 689; 60 NW2d 907 (1953):

"The question as to what constitutes a nuisance is one of law for the court; but *it is for the jury to decide whether a particular act or structure or use of property, which is not a nuisance* per se, *is a nuisance in fact."* (Emphasis added.)

The *Brown* Court thus established that when dealing with a nuisance in fact, it is for the trial judge to instruct the jury as to the elements which constitute a nuisance. However, it is for the jury to determine whether a particular act or use of property creates a nuisance in fact under the circumstances.

Therefore, in answer to the first question, once a nuisance per se's existence is alleged and established by proof, a nuisance per se is established as a matter of law. However, if a nuisance in fact is alleged, whether or not a particular thing or act creates a nuisance is a question of fact to be determined by the trier of fact. Furthermore, when the issue of immunity arises once the trier of fact finds the existence of a nuisance in fact, the trier of fact must then determine whether the nuisance in fact was created negligently or intentionally.

Since the Court of Claims judge, acting as a trier of fact, found an intentional nuisance created by the present facts, the second narrow issue to decide is whether an intentional nuisance fits within the perimeters of the judicially created exception to governmental immunity.

Examining again the previously cited language from *Royston, supra,* it is obvious that the question of whether intentional nuisances by governmental agencies are entitled to immunity was not addressed by that Court. One can only glean that governmental immunity is a bar to liability for "want of care in maintenance", to negligently created nuisances, while not a bar to liability for governmental activity which creates a nuisance per se.

In *Denny v Garavaglia,* 333 Mich 317; 52 NW2d 521 (1952), three classes of nuisance where personal injury results were recognized:

1. nuisances created by illegal conduct (nuisances per se);

2. nuisances created by conduct intended to bring about conditions which, in fact, constituted a nuisance (intentional nuisances); and

3. nuisances created by negligent conduct (negligent nuisances). As noted, when placed within the general nuisance categories of nuisance per se and nuisance in fact, the last two categories, intentional nuisance and negligent nuisance, are nuisances in fact requiring factual resolution by the trier of fact.

It is significant to recognize, however, that in dealing with other legal concepts, lines are drawn differently where distinctions are made between types of nuisances. Although categorized separately for evidentiary considerations, nuisances per se and intentional nuisances have been coupled for liability considerations. For example, on several occasions the Court has held that contributory negligence, while a defense for negligent nuisances, is not an appropriate defense for either nuisances per se or intentional nuisances. *Denny, supra; Dahl v Glover,* 344 Mich 639; 75 NW2d 11 (1956).

More importantly, the definition of an intentional nuisance clearly reflects that the nature of the conduct complained of in an intentional nuisance situation is more akin to conduct creating a per se nuisance than the careless or neglectful conduct which produces a negligent nuisance.

The *Denny* Court, citing *Beckwith v Town of Stratford,* 129 Conn 506, 511; 29 A2d 775 (1942), defined intentional nuisance as:

"A second [type of nuisance] includes nuisances which are intentional, using that word as meaning not that a

wrong or the existence of a nuisance was intended but that the creator of them intended to bring about the conditions which are in fact found to be a nuisance."

To hold the government immune from the consequences of its intentional acts which create a nuisance would be, as posited in his dissent by the Court of Appeals Judge Thomas M. Burns, unconscionable.

It was the apparently frozen nature of this pond that created a nuisance. The state was held by the Court of Claims judge to have intentionally constructed the pond in the path of a warm water flow, the "Bell drain". This directly resulted in the pond's deceptive appearance and, in a sense, created a trap for those crossing its surface.

Accordingly, the bar of governmental immunity is inapplicable when a trier of fact determines as in this case, that the alleged nuisance was intentional, *i.e.,* that the governmental agency intended to bring about the conditions which are in fact found to be a nuisance.

I would reverse the Court of Appeals decision and reinstate the Court of Claims judgment.

Williams, J., concurred with Blair Moody, Jr., J.

Ryan, J. Plaintiffs bring these companion cases on behalf of the estates of two children and the father of one of them, all of whom drowned on December 10, 1969, in a large artificial pond created and owned by the State of Michigan.

The factual background behind this tragedy began with the Michigan State Highway Department's purchase of a piece of property in Arenac County for the purpose of obtaining the sand therein for use in constructing a portion of the I-

75 freeway. Inevitably, as the sand was removed, a large pit, commonly known as a "borrow pit", came into existence. According to the District Highway Engineer, the pit was deliberately dug in the path of a drain in a manner which would permit water to enter on the west side of the "borrow pit" and exit out the east edge. The flow of the drain in combination with a flowing well in the bottom of the pit created a pond covering approximately twelve acres of land. After construction of the highway was completed, the Highway Department trimmed the edges of the pit so there were graded slopes into the pond and topsoil was added to the surrounding area which was then seeded. In essence, the former "borrow pit", through deliberate planning and effort, was converted into an attractive recreational area.

The summer following the creation of the pond, the local residents used it without interference for swimming, boating, water-skiing and fishing. In the wintertime, prior to December 10, 1969, it was used for snowmobiling and skating.

On December 10, 1969, Harley Fouchia, age 12, and Lee Gerzeski, age 10, drowned in the pond after apparently wandering out onto its frozen surface and breaking through the ice near the point where the drain flowed into the pond. When Harley's mother noticed that the boys were missing, she sent her husband, George, to look for them. In a futile attempt to find and rescue them, he too broke through the ice and was drowned.

Two years later suits were filed in the Court of Claims charging the state with maintaining an attractive nuisance, and with gross negligence in failing to fence the "borrow pit" or warn the public of any latent dangers.

In each case the defendants moved for summary

judgment, claiming that the State of Michigan and its agencies were immune from liability. MCLA 691.1407; MSA 3.996(107).[1]

The plaintiffs answered that the state's statutory immunity from liability was declared unconstitutional in *Maki v East Tawas,* 385 Mich 151; 188 NW2d 593 (1971). The defendant replied correctly that *Maki* had merely nullified *statutory* immunity but did not abrogate the state's *common-law* sovereign immunity from tort liability.

Plaintiffs responded by asserting that, assuming without conceding that the defendant was immune from liability for its negligence, a cause of action based upon the theory of nuisance was not barred by the immunity doctrine. Agreeing with the plaintiffs, the Court of Claims judge denied the motion for summary judgment, finding that suits based on nuisance were exceptions to the doctrine of sovereign immunity. Following a trial at which the judge sat as trier of fact, judgments were entered for the plaintiffs. The court found that a "nuisance" depended upon various circumstances and that the facts in the case led to the conclusion that this pond was an "attractive nuisance" and that it also met the requirements of an "intentional nuisance".

The Court of Appeals reversed, holding that the case did not fall within the particular subclass of "nuisance" which constitutes an exception to the doctrine of sovereign immunity and, therefore, the plaintiffs' cause of action was barred by the state's

[1] MCLA 691.1407; MSA 3.996(107) provides:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed."

assertion of its sovereign immunity. We granted leave to appeal. 68 Mich App 91; 241 NW2d 771 (1976). 397 Mich 832 (1976).

## I

We are confronted here with yet another aspect of sovereign immunity from liability. The focal issue involves a determination of whether the facts in the instant case demonstrate that the condition complained of was a nuisance of a character such as to constitute an exception to the doctrine of sovereign immunity, thus imposing liability upon the state.

These causes of action arose during the hiatus between 1965 and 1970 when statutory governmental immunity was nonexistent in this state. In *Maki v East Tawas, supra,* the language of the section of the statute[2] granting immunity was found to exceed the scope of the title of the act. Consequently, it was declared an unconstitutionally enacted provision under Const 1963, art 4, § 24 and void from the date of its passage. Since the defect was not cured until August 1, 1970, with the enactment of 1970 PA 155, a *statutory* immunity defense was not available to the state for this interim period.

Precluded from relying upon the aforesaid statute, the state maintained in these cases that 1964 PA 170 was merely an affirmation of the state's immunity from tort liability and that claims arising prior to August 1, 1970 were subject to *common-law* or, as it is sometimes known, judicial governmental immunity. Most recently, in *Pittman v City of Taylor,* 398 Mich 41; 247 NW2d 512 (1976), this Court collaterally affirmed the validity

---

[2] Section 7 of 1964 PA 170. See footnote 1.

of that view before prospectively abolishing judicial or common-law tort immunity.

In *Pittman* we held that common-law principles upon which the immunity of the state was founded should *no longer* be given effect. Our holding was prospective, with the exception of any cases then pending in which an *express challenge* to the common-law defense of governmental immunity had been made and preserved.[3] Consequently, since this cause of action was "pre-*Pittman*", the judicial immunity to tort liability defense asserted by the state is valid absent an express challenge to common-law governmental immunity.

Upon careful review of the instant record it is evident that the plaintiffs' theory of recovery avoids even the recognition of judicially created governmental immunity in Michigan, to say nothing of an express challenge to it. Rather, their arguments focus solely upon the constitutionality of statutory sovereign immunity[4] and the alleged "nuisance" exception to such immunity.

The language in *Pittman* was clear and unequivocal. Since this record is utterly devoid of an "express challenge" to common-law governmental immunity, our holding in *Pittman* abolishing common-law governmental immunity is inapplicable to the causes of action asserted here.

## II

Prior to *Pittman,* by raising the common-law

---

[3] "The holding we announce today is prospective, with the exception of the instant case and any cases now pending in which an *express challenge to the common-law defense of governmental immunity had been made and preserved."* (Emphasis supplied.) *Pittman v City of Taylor,* 398 Mich 41, 50; 247 NW2d 512 (1976).

[4] Evidently the plaintiffs' attorneys erroneously believed that a statutory grant of state immunity from liability may have been in existence at the time of the accident.

immunity defense, the state could generally insulate itself from *tort liability* provided the activity, condition or undertaking in question was a "governmental function".[5] This general rule of sovereign immunity is not absolute, however, and has been subject to very narrow statutory and judicial exceptions.

The *statutory* exceptions to governmental immunity from tort liability focus upon injuries caused by defective highways, MCLA 691.1402; MSA 3.996(102); negligent operation of government-owned vehicles, MCLA 691.1405; MSA 3.996(105); and dangerous or defective conditions of public buildings, MCLA 691.1406; MSA 3.996(106). In such circumstances the Legislature has seen fit to waive the state's immunity from liability and accept liability in favor of a claimant.

In addition to the statutory exceptions, this Court has carved out extremely narrow *judicial* exceptions to accord with concepts of fundamental fairness and the constraints established by the Constitution of the State of Michigan, Const 1963, art 10, § 2,[6] and these exceptions have come to be known, somewhat imprecisely, as cases of "nuisances".

Actually the judicial exceptions are within a class which embraces just two types of factual

---

[5] It is firmly established that state agencies are entitled to immunity from liability only when they are engaged in a "governmental function". *See Thomas v Department of State Highways,* 398 Mich 1, 11; 247 NW2d 530 (1976); *Manion v State Highway Commissioner,* 303 Mich 1, 19; 5 NW2d 527 (1942); *Daszkiewicz v Detroit Board of Education,* 301 Mich 212, 220; 3 NW2d 71 (1942). Although the plaintiffs originally alleged that the state was engaged in a "proprietary function", that contention was subsequently withdrawn and is not at issue here.

[6] Private property shall not be taken for public use without just compensation therefor being first made or secured in a manner prescribed by law. Compensation shall be determined in proceedings in a court of record. Const 1963, art 10, § 2. Also counterparts, Const 1908, art 13, § 1; Const 1850, art 15, § 15; Const 1835, art 1, § 19.

circumstances. The first exception entails those situations where the state creates or maintains a "nuisance per se".[7] *Royston v City of Charlotte,* 278 Mich 255, 260; 270 NW 288 (1936). See, for example of "nuisance per se", *Trowbridge v City of Lansing,* 237 Mich 402; 212 NW 73 (1927), decaying garbage in "piggery"; *Attorney General ex rel Wyoming Twp v Grand Rapids,* 175 Mich 503; 141 NW 890 (1913), disposing of raw sewage in river.

Such activities or conditions are properly characterized as a "nuisance per se" because they are nuisances without regard to the care with which they are conducted or the circumstances under which they exist. *Bluemer v Saginaw Central Oil & Gas Service, Inc,* 356 Mich 399, 411; 97 NW2d 90 (1959); *People v Detroit White Lead Works,* 82 Mich 471, 476; 46 NW 735 (1890). According to Prosser on Torts, (4th ed), § 87, pp 582-583, the concept of "nuisance per se" is restricted to three types of cases:

"So far as the idea has any validity it apparently is restricted to three types of cases. Certain public nui-

_____

[7] My colleague, Justice Moody, construes the *Royston* decision as concerning itself with the class of "nuisances predicated upon negligence" as opposed to the class of "nuisances per se". Because the Court did not use the more encompassing classification of "nuisances in fact", Justice Moody concludes that only "nuisances predicated upon negligence" do not survive the otherwise proper claim of governmental immunity. A review of the language in *Royston* does not support this conclusion.

"Acts in the discharge of governmental functions which create a nuisance *per se* do not come within the immunity otherwise accorded. Want of care in maintenance, however, presents the question of negligence only, and not that of a public nuisance, which must rest on inherent danger even under the best of care." *Royston* at 260.

It is evident that the Court was not using the class of "nuisances predicated upon negligence" in contrast with "nuisances per se", but was merely explaining that an improperly maintained swing did not fall within the classification of "nuisance per se". The Court clearly specified that it was the class of nuisances defined as "nuisances per se" which did not come within the immunity otherwise afforded the state.

sances are designated specifically by statute. Within
constitutional limitations, the declaration of the legisla-
ture is conclusive, and will preclude any inquiry into
their unreasonable character. In other cases the defend-
ant is intentionally interfering for his own purposes
with the plaintiff's interests, by maintaining something
such as a fertilizer plant, a sawmill or a cesspool, which
is clearly an unreasonable thing in view of its surround-
ings. When the nature of the enterprise, its locality and
the method of conducting it are reasonable in propor-
tion to the resulting interference, the same courts have
found that the same activity is not a nuisance at all.
Finally, nuisances which result from abnormal and
unduly hazardous activities, such as the storage of
explosives, are said to be 'absolute' in the sense that
they do not require any intent to do harm, or any
negligence."

It is obvious, therefore, that it is the very es-
sence or nature of a "nuisance per se" which long
ago moved this Court to except it from the immu-
nity otherwise accorded to the state.

The state is not vested with an absolute right to
use its property in any manner it may choose
without regard for private persons or the public at
large. In the few instances wherein the Legislature
or this Court may label a condition or activity
patently unreasonable by its very nature, the state
may not circumvent its liability in connection with
the situation or operation by raising the shield of
sovereign immunity. Where the state creates or
maintains a "nuisance per se", the immunity from
liability otherwise accorded is not available.

The second judicial exception to governmental
immunity consists of those situations wherein
damage is caused by the direct trespass of an
instrumentality from government-owned land onto
private property. *Buckeye Union Fire Ins Co v
Michigan,* 383 Mich 630; 178 NW2d 476 (1970), fire

spreading from state maintained hazard; *Herro v Chippewa County Road Commissioners,* 368 Mich 263; 118 NW2d 271 (1962), flooding waters escaping from artificial reservoir; *Ferris v Board of Education of Detroit,* 122 Mich 315; 81 NW 98 (1899), slippery condition created by ice and snow falling from roof of government-owned building onto neighboring land.[8]

In such cases the potentially dangerous instrumentality or condition literally moves from government-owned land onto adjacent property. Consequently, the neighboring premises and its occupants are subject to either the creation of a risk foreign to the premises or direct and immediate injury. When this transpires the government effectively deprives an owner of the useful possession of that which he owns. This Court views such action as a public taking. *Buckeye Union Fire Ins Co v Michigan, supra; Herro v Chippewa County Road Commissioners, supra; Ashley v Port Huron,* 35 Mich 296 (1877). Under this analysis the state is obliged to pay reasonable compensation for damages ensuing from such "taking" in accordance with the Constitution of the State of Michigan, Const 1963, art 10, § 2.[9]

---

[8] *Pound v Garden City School Dist,* 372 Mich 499; 127 NW2d 390 (1964), extended *Ferris, supra,* to public ways. *Pound* involved facts similar to *Ferris* except that the water flowed from government-owned land onto a public way maintained by a different governmental authority.

This Court held that defense of governmental immunity may not be interposed because to do so would distinguish between a plaintiff who is directly injured while on his own premises by the wrongful act of defendant and another plaintiff who is likewise directly injured in a place, such as a public way, where he has a right to be and which is not subject to the authority of the defendant.

We note that *Pound* is an extension of the trespass line of cases and is applicable only where the condition was created and the injury sustained "outside the limits of the defendant's premises". See *Pound* at 502.

[9] *See* footnote 6.

Therefore, when the "taking" is the result of an "intruding nuisance", the state cannot validly raise sovereign immunity from liability to avoid paying compensation to a damaged party.

Outside of the aforementioned exceptions, tort liability predicated upon the existence of a "nuisance" does not override a claim of governmental immunity.

Turning to the facts before us, we are convinced that the pond is not a nuisance within the established exceptions to governmental immunity from liability. We re-emphasize that the narrow judicial exceptions to governmental immunity extend only to "per se" and "intruding" nuisances.

The decision of the Court of Appeals is hereby affirmed. No costs, a public question.

COLEMAN, J., concurred with RYAN, J.