CROSBY v CITY OF DETROIT

Docket No. 59169. Submitted November 10, 1982, at Detroit.—Decided
February 10, 1983. Leave to appeal applied for.

Eugene Crosby, while employed by the Rocco Ferrera Construc-
tion Company in the construction of a sewer tunnel for the City
of Detroit, was injured when he fell as a result of being
overcome by fumes emitted by various pieces of equipment and
machinery. Crosby filed suit in Wayne Circuit Court against
the City of Detroit, alleging various theories of negligence,
gross negligence, inherently dangerous work activities, strict
liability, nuisance per se and nuisance in fact. The court,
Charles S. Farmer, J., granted summary judgment for the
defendant based on governmental immunity. The plaintiff ap-
peals alleging that the trial court erred in: (1) finding that the
defendant was entitled to the defense of governmental immu-
nity, (2) granting summary judgment because his complaint
sufficiently pled a cause of action for nuisance to which govern-
mental immunity is not a defense, and (3) denying him the
opportunity to amend his complaint. *Held:*

1. The trial court did not err in finding that the defendant
was entitled to the defense of governmental immunity. The
defendant was engaged in the discharge of a governmental
function.

2. The trial court did not err in granting the defendant's
motion for summary judgment based on governmental immu-
nity on the nuisance claim. The plaintiff failed to state a valid
claim of intentional nuisance. Plaintiff did not allege that the
defendant intentionally created or continued the alleged activ-

REFERENCES FOR POINTS IN HEADNOTES

[1] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 27.
[2] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 31,
191.
Municipality's liability arising from negligence or other wrongful
act in carrying out construction or repair of sewers and drains. 61
ALR2d 874.
[3, 5] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 79,
321, 322.
[4] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 293.

ity causing the alleged nuisance with full knowledge that the harm to plaintiff was substantially certain to follow. Further, summary judgment was proper because the record below is devoid of any affidavits, depositions, admissions or other factual support for plaintiff's nuisance claim.

3. The trial court did not err in denying the plaintiff an opportunity to amend his complaint. Amendment would not have cured the defect.

Affirmed.

D. F. WALSH, J., concurred in the result only.

1. GOVERNMENTAL IMMUNITY — GOVERNMENTAL FUNCTIONS.

Generally, all governmental agencies are immune from tort liability in all cases wherein the governmental agency is engaged in the exercise or discharge of a governmental function; because the term "governmental function" has no statutory definition, the task of determining whether a particular government activity is a governmental function within the meaning of the statute has fallen on the judiciary (MCL 691.1407; MSA 3.996[102]).

2. GOVERNMENTAL IMMUNITY — REGIONAL SEWER SYSTEMS.

The construction of a comprehensive regional sewer system, because it must be publicly coordinated in light of its impact on neighboring communities in terms of pollution control and public safety, is a governmental function for purposes of governmental immunity from tort liability.

3. GOVERNMENTAL IMMUNITY — INTENTIONAL NUISANCE.

Governmental immunity is not a bar to a tort action for nuisance against the state or one of its instrumentalities where the trier of fact determines that the alleged nuisance was intentional.

4. GOVERNMENTAL IMMUNITY — NEGLIGENT CONDUCT.

Governmental immunity is a bar to a tort action for nuisance against the state or one of its instrumentalities based upon nuisances created by negligent conduct.

5. NUISANCE — INTENTIONAL NUISANCE.

To state a valid claim of intentional nuisance, a plaintiff must allege that a defendant intentionally created or continued the acitivity causing the nuisance with full knowledge that the harm to the plaintiff was substantially certain to follow.

6. MOTIONS AND ORDERS — AMENDMENT OF COMPLAINTS.

Failure of a trial court to allow amendment of a complaint is not

grounds for reversal where the amendment would not have cured the fatal defect.

*The Jaques Admiralty Law Firm, P.C.* (by *William R. Morris*), for plaintiff.

*Harvey, Kruse, Westen & Milan, P.C.* (by *Michael F. Schmidt*), for defendant.

Before: D. C. RILEY, P.J., and N. J. KAUFMAN and D. F. WALSH, JJ.

PER CURIAM. Plaintiff appeals as of right from the Wayne County Circuit Court's order of July 10, 1981, granting defendant's motion for summary judgment pursuant to GCR 1963, 117.2(1) and 117.2(3), failure to state a claim upon which relief can be granted and no genuine issue of material fact.

Plaintiff's complaint alleged that while he was employed by Rocco Ferrera Construction Company in the construction of a sewer tunnel for the City of Detroit, he was overcome by fumes emitted by various equipment and machinery and, as a result, he fell and was injured. The construction of the sewer tunnel was part of an overall program designed to create a regional sewage disposal system for southeastern Michigan, utilizing the centralized facilities of the Detroit Water and Sewage Department.

Plaintiff commenced this civil action seeking damages for personal injury and alleging various theories of negligence, gross negligence, inherently dangerous work activities, strict liability, nuisance per se and nuisance in fact. After the completion of the discovery process, defendant's motion for summary judgment based on the defense of gov-

ernmental immunity was granted. Plaintiff appeals raising two issues for our consideration.

First, plaintiff contends that the trial court erred in finding that defendant was entitled to the defense of governmental immunity.

In *Pittman v Taylor,* 398 Mich 41, 45; 247 NW2d 512 (1976), our Supreme Court abrogated the common-law doctrine of state governmental immunity and today the doctrine exists only by statute. MCL 691.1407; MSA 3.996(107) provides in part:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function."

The Legislature has enacted certain exceptions to this general grant of immunity, none of which are applicable to the case at bar. See *Thomas v State Highway Dep't,* 398 Mich 1, 9, fn 3; 247 NW2d 530 (1976).

Inasmuch as the term "governmental function" has no statutory definition, the task of determining whether a particular government activity is a "governmental function" within the meaning of the statute has fallen on the judiciary. The Supreme Court has adopted a case-by-case approach to making this determination. See, *Thomas, supra,* pp 11-13. Out of this case-by-case approach arose three separate classification schemes or tests for determining when an activity is a governmental function. Recent Supreme Court decisions have consistently utilized these three tests in classifying claims of governmental immunity.

The first of these tests, the *"sui generis"* test was announced by the Supreme Court in *Thomas, supra,* p 21, and later applied in *Parker v City of Highland Park,* 404 Mich 183, 193-195; 273 NW2d

413 (1978). Under this approach, which was adopted by Justices FITZGERALD, KAVANAGH and LEVIN, the term "governmental function" is limited to "those activities *sui generis* governmental— of essence to governing". This approach would confer governmental immunity only upon those activities which were of such a "peculiar nature" that they could only be done by the government.

In adopting the "of essence to government" test, the FITZGERALD bloc specifically rejected the "common good of all" test applied by a dissenting opinion signed by Justices WILLIAMS, COLEMAN and RYAN. *Parker, supra,* p 194.

In casting the crucial "swing vote" the late Justice MOODY concurred with the FITZGERALD bloc's conclusion that the operation of a municipally owned general hospital did not constitute a governmental function. Justice MOODY, however, utilized a slightly different approach to the *"sui generis"* test. Justice MOODY suggested:

"[A]s a basic guideline, the crux of the governmental essence test should be founded upon the inquiry whether the purpose, planning and carrying out of the activity, due to its unique character or governmental mandate, can be effectively accomplished only by the government. Unless liability would be an unacceptable interference with government's ability to govern, activities that fall outside this perimeter, although performed by a government agency, are not governmental functions and therefore not immune." *Parker, supra,* p 200.

Justice MOODY also rejected the FITZGERALD bloc's conclusion as stated in its dissenting opinion in *Thomas, supra,* that a function is not governmental unless the particular activity involved has "no common analogy in the private sector".

Justice MOODY's analysis suggests that an essen-

tial government activity may have a common analogy in the private sector, thus his interpretation of the *"sui generis"* test clearly extends immunity to a broader range of government activities than would the FITZGERALD bloc. See Littlejohn & DeMars, *Governmental Immunity After Parker and Perry: The King Can Do Some Wrong,* 1982 DC L Rev 1, 17 (1982).

In *Perry v Kalamazoo State Hospital,* 404 Mich 205; 273 NW2d 421 (1978), the Justices aligned themselves as they had in *Parker, supra,* with Justice MOODY casting his "swing vote" in favor of the dissenting opinion in *Parker,* thus holding that the operation of a public mental hospital was a "governmental function". It is of special significance to the case at bar that Justice MOODY's opinion in *Perry, supra* (which at first glance might appear contrary to his position in *Parker,* that the operation of a general hospital is not a governmental function), was based, at least in part, upon the government's pervasive role in the area of mental health, as well as the legislatively mandated public policy in favor of fostering treatment and care for the mentally handicapped.

While the untimely death of Justice MOODY and the impending changes in the Supreme Court's membership cast some doubt as to the continuing validity of *Parker, supra,* and *Perry, supra,* our decision today is governed by those cases.

Even if we were to assume, as plaintiff would have us hold, that the operation and maintenance of a regional sewage disposal system could be carried out by the private sector and thus is not a governmental function according to Justices FITZGERALD, LEVIN and KAVANAGH, see *Perry, supra,* p 215, and *Thomas, supra,* pp 21-25, it does not follow that the trial court erred in holding that

defendant was entitled to the defense of governmental immunity.

Under the "common good of all" test advocated by Justices RYAN, WILLIAMS and COLEMAN, the operation of this sewage disposal system is clearly a governmental function. Applying Justice MOODY's analysis to the facts of the case at bar tips the scales in favor of finding that the defendant was in fact engaged in the discharge of a governmental function.

In the case at bar, as in *Perry,* the government plays a pervasive role in the field. The record in this case reveals that the sewage disposal facility in question serves approximately five million people in the six-county area of Southeastern Michigan, an area of 3,951 square miles. The project was accomplished at a cost of over $100,000,000. It was financed entirely by government grants, 55% federal, 25% state and 20% City of Detroit. To our knowledge, there are no private entities providing alternative sewage disposal systems within this region. Moreover, as in *Perry, supra,* this activity is in furtherance of the public policy in favor of the efficient and ecologically sound disposal of waste sewage. Our holding today is consistent with the previous decisions of this Court which have held that the operation of the same sewer project is a governmental function. See *Davis v Detroit,* 98 Mich App 705; 296 NW2d 341 (1980), *lv den* 410 Mich 856 (1980); *Scott v Detroit,* 107 Mich App 194; 309 NW2d 201 (1981).

We are mindful of this Court's decision in *Mitts v Village of Fowlerville,* 119 Mich App 76; 326 NW2d 431 (1982), holding that the operation of a much smaller sewage disposal system was not a governmental function, however, we are persuaded that our holding represents the better view. Inas-

much as the sewage system involved in *Mitts* was dwarfed in comparison to the one in the case at bar, it was affected by different policy considerations. We conclude, therefore, that the trial court did not err in holding that the plaintiff was entitled to the defense of governmental immunity.

Plaintiff also contends that the trial court erred in granting defendant's motion for summary judgment because his complaint sufficiently pled a cause of action for nuisance to which the defense of governmental immunity does not lie.

While our resolution of this issue is made difficult by reason of a split of authority within the Supreme Court, there is unanimity within the Court in support of the proposition that, at least in certain circumstances, there is a judicially created exception to governmental immunity for tortious activity sounding in nuisance. See *Rosario v Lansing,* 403 Mich 124; 268 NW2d 230 (1978); *Gerzeski v Dep't of State Highways,* 403 Mich 149; 268 NW2d 525 (1978).

Determining the scope of this exception, however, is somewhat problematic. A review of the plurality opinion of Justices FITZGERALD, KAVANAGH and LEVIN in *Rosario, supra,* and *Gerzeski, supra,* reveals that they do not believe that governmental immunity is a defense to a claim of nuisance, regardless of whether it is an intentional or a negligent nuisance.

The late Justice MOODY and Justice WILLIAMS on the other hand took the position that governmental immunity does not bar claims based upon a nuisance in fact that was created intentionally. Conversely, they would hold that, where a claim of nuisance is created by negligent conduct, governmental immunity is a valid defense.

The remaining two members of the Court, Jus-

tices RYAN and COLEMAN, would allow the nuisance exception to operate only in very narrow circumstances, *i.e.,* where the conduct creates a nuisance per se *(i.e.,* activities that are nuisances without regard to the care with which they are conducted or the circumstances under which they exist) or an intruding nuisance *(i.e.,* where damage is caused by a direct trespass).

In the case at bar, plaintiff's complaint alleged, *inter alia,* nuisance per se and nuisance in fact.[1] We note that on appeal plaintiff has failed to challenge the trial court's order of summary judgment dismissing his claim of nuisance per se and, therefore, this issue is deemed abandoned and will not be considerecd by the Court. *Mitcham v Detroit,* 355 Mich 182, 203; 94 NW2d 388 (1959); *Davey v Detroit Automobile Inter-Ins Exchange,* 98 Mich App 123, 128; 296 NW2d 12 (1980).

The question then becomes whether the allegations contained in plaintiff's complaint were sufficient to set forth a valid claim of intentional

---

[1] Count VI of plaintiff's complaint entitled "Nuisance in Fact" alleged:

"The above work activities as undertaken at the direction of defendants resulted in the accumulation of hazardous and poisonous gases within the said tunnel, causing a dangerous, hazardous and offensive condition in said tunnel, which condition was contrary to the health and welfare of employees in said tunnel, including plaintiff herein and constitutes a nuisance in fact, which nuisance was a direct and proximate cause in the catastrophic event upon which this cause is based and resultant injury to plaintiff."

In addition, ¶ 3 of plaintiff's complaint which was incorporated by reference into Count VI alleged:

"The site of construction where plaintiff was engaged as a laborer for the aforesaid employer and contractee of defendants was in the general vicinity of Eighteen Mile Road and Hayes Road, plaintiff suffering injury to his person on or about February 13, 1976, while in the process of undertaking laborious work activities within the said tunnel shaft he was overcome by noxious and poisonous fumes as emitted by various machinery in said tunnel and permitted to accumulate in excessive amounts, the said incident causing injury to plaintiff of lasting duration rendering him totally disabled for the rest of his life."

nuisance in fact. If they were not, we must affirm the trial court's order of summary judgment pursuant to GCR 1963, 117.2(1), because a majority of the Supreme Court (Justices MOODY, WILLIAMS, RYAN and COLEMAN) agree that the doctrine of governmental immunity bars claims based upon nuisances created by negligent conduct.

In *Rosario, supra,* p 142, it was stated that:

"In order to find an intentional nuisance, the trier of fact must decide based upon the evidence presented that the governmental agency intended to bring about the conditions which are in fact found to be a nuisance. This finding comports with the definition of intentional nuisance set forth in *Denny v Garavaglia,* 333 Mich 317, 331; 52 NW2d 521 (1952):

" 'A second [type of nuisance] includes nuisances which are intentional, using that word as meaning not that a wrong or the existence of a nuisance was intended but that the creator of them intended to bring about the conditions which are in fact found to be a nuisance.' "

In his leading treatise on torts, Prosser highlights the difference between an intentional nuisance and a nuisance arising out of negligent conduct. With respect to intentional nuisances, he says that:

"Occasionally they proceed from a malicious desire to do harm for its own sake; but more often they are intentional merely in the sense that the defendant has created or continued the condition causing the nuisance *with full knowledge that the harm to plaintiff's interests is substantially certain to follow.*

\* \* \*

"But a nuisance may also result from conduct which is merely negligent, where there is no intent to interfere with the plaintiff, but merely a failure to take precautions against a risk apparent to a reasonable

man." (Emphasis added.) Prosser, Torts (4th ed), § 87, pp 574-575.

Thus, in order to have stated a valid claim of intentional nuisance, plaintiff must have alleged that the defendant intentionally created or continued the alleged activity causing the alleged nuisance, in this case operation of machinery within the tunnel in such a manner so as to cause an accumulation of toxic fumes, with full knowledge that the harm to plaintiff was substantially certain to follow. This, plaintiff has failed to do and, therefore, we conclude that the trial court did not err in granting defendant's motion for summary judgment based on the defense of governmental immuntiy.

In addition, we would hold that the trial court's order of summary judgment was proper under GCR 1963, 117.2(3) because the record below is devoid of any affidavits, depositions, admissions or other factual support for his claim of nuisance. *Brooks v Reed,* 93 Mich App 166; 286 NW2d 81 (1979).

Finally, we reject plaintiff's contention that the trial court erred in refusing him an opportunity to amend his complaint to correct any "factual defect". Failure of the trail court to allow amendment of a complaint is not grounds for reversal where the amendments would not have cured the fatal defect. *Zimmerman v Stahlin,* 374 Mich 93, 96; 130 NW2d 915 (1964). In the case at bar, even if the trial court had allowed plaintiff an opportunity to amend his complaint, summary judgment would still lie for lack of a genuine issue of material fact.

Affirmed.

No costs, a public issue being involved.

D. F. WALSH, J., concurred in the result only.