JENKINS v CITY OF DETROIT

Docket No. 73194. Submitted July 17, 1984, at Detroit.—Decided November 7, 1984.

Alton and Clorene Jenkins brought an action for damages against the City of Detroit. Alton Jenkins was injured while working on the construction of a sewer project. His employer had contracted with the city to build a portion of the sewer. The Wayne Circuit Court, Roland L. Olzark, J., granted summary judgment in favor of the city on the ground of governmental immunity. Plaintiffs appealed. *Held:*

1. The construction of the particular sewer system involved in this case has previously been held by the Court of Appeals to be a governmental function. Thus, the city is entitled to governmental immunity from tort liability.

2. The plaintiffs, in alleging a nuisance, failed to plead facts constituting an intentional nuisance so as to avoid governmental immunity. Plaintiffs' allegations of negligent conduct were not sufficient to support a claim of intentional nuisance.

Affirmed.

1. Governmental Immunity — Governmental Function.

The construction of a comprehensive regional sewer system which, because of its size, could not be effectively coordinated by private interests is a governmental function for purposes of governmental immunity from tort liability (MCL 691.1407; MSA 3.996[107]).

2. Governmental Immunity — Intentional Nuisance — Pleading.

A plaintiff's allegations must support a claim of intentional nuisance in order to avoid summary judgment on the ground of governmental immunity; such a claim must allege that the defendant governmental agency knew or must have known that its creation of the nuisance was substantially certain to result in harm to the plaintiff; allegations of mere negligent conduct are not sufficient to support a claim of intentional nuisance.

References for Points in Headnotes
[1, 2] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 168 *et seq.*
72 Am Jur 2d, States § 99 *et seq.*

*The Jaques Admiralty Law Firm, P.C.* (by *Robert E. Swickle*), for plaintiffs.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *Sharon C. Ranucci*), for defendant.

Before: V. J. BRENNAN, P.J., and ALLEN and GRIBBS, JJ.

PER CURIAM. Plaintiff Alton Jenkins was injured while operating an underground mine locomotive during the construction of a sewer project. Plaintiffs alleged that his injuries occurred when the locomotive malfunctioned. At the time of the accident, he was employed by Traylor Mancini, a joint enterprise which had contracted with the defendant (city) to build a section of the sewer. The sewer project, begun in 1962, has been termed a "super-sewer". It was designed to serve six heavily-populated counties in southeastern Michigan with a goal of enhancing the water quality of the Great Lakes.

The trial court granted the city's motion for summary judgment, pursuant to GCR 1963, 117.2(1) and (3), on the grounds of governmental immunity and plaintiffs' failure to state a claim of intentional nuisance in avoidance of immunity. Plaintiffs appeal as of right. We affirm.

Plaintiffs first argue that the trial court erred in finding that the construction of the "super-sewer" was a governmental function, thus providing the city with governmental immunity.

Governmental immunity in Michigan is statutory. MCL 691.1407; MSA 3.996(107) provides in part:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in

all cases wherein the government agency is engaged in the exercise or discharge of a governmental function."

Inasmuch as the term "governmental function" has no statutory definition, the task of determining whether a particular government activity is a "governmental function" within the meaning of the statute has fallen on the judiciary. *Crosby v Detroit,* 123 Mich App 213, 216; 333 NW2d 557 (1983).

This case arrives at this Court in an unusual posture. Three previous case, *Davis v Detroit,* 98 Mich App 705; 296 NW2d 341, *lv den* 410 Mich 856 (1980); *Scott v Detroit,* 107 Mich App 194, 309 NW2d 201 (1981), *Modified* 113 Mich App 241; 318 NW2d 32 (1982), *lv den* 417 Mich 864 (1983); and *Crosby, supra,* disposed of those plaintiffs' governmental function argument. All three cases involved the same "super-sewer" project. Three different panels of this Court held that the city was engaging in a governmental function in the sewer construction and was thus entitled to the defense of governmental immunity.

The import of *Davis, Scott* and *Crosby* is that the trial court's grant of summary judgment in the present case was proper, and plaintiffs' attorney conceded as much at the hearing on the city's motion. It is plaintiffs' position, however, that the decision in a case now pending before the Michigan Supreme Court, *Ross v Consumers Power Co,* 415 Mich 1; 327 NW2d 293 (1982), *reh gtd,* 417 Mich 1113 (1983), will be dispositive.

The *Ross* case involved a plaintiff injured while employed by a construction company building a drain for a municipal drainage district. The principal defendant, Consumers Power Company, brought a third-party complaint against the drainage district, and the trial court granted summary

judgment due to the district's governmental immunity. This Court reversed, holding that the construction of the drain was *not* a governmental function under the statute. *Ross v Consumers Power Co,* 93 Mich App 687; 287 NW2d 319 (1979), *aff'd* 415 Mich 1; 327 NW2d 293 (1982). The Court reasoned that the construction of the drain was not "of the essence of governing" and was neither of a unique character nor governmentally mandated in such a manner that it could be effectively accomplished only by the government.

This Court's decision in *Ross* was followed by *Davis, supra,* which held that the construction of the Detroit "super-sewer" *was* a governmental function. In *Davis,* the panel noted *Ross,* but stated:

> "However, due to the magnitude and public importance of the sewer project in question, we believe its construction constituted a governmental function. * * *
>
>       * * *
>
> "* * * It is possible for local government units to grant franchises to private individuals to own and operate sewage treatment facilities * * *. However, the size of the project herein, in terms of cost, volume of effluent, and water pollution control, convinces us that it could not be effectively coordinated by a private individual or company in the best interest of the public." (Citations omitted). *Davis, supra,* pp 709-710.

*Davis* was, in turn, followed by *Scott, supra,* which followed the *Davis* reasoning. After the *Davis* and *Scott* decisions, the Supreme Court handed down its decision in *Ross,* affirming this Court by an equally divided bench. The *Ross* decision unfortunately did not clarify the law on governmental immunity. Justices RYAN, WILLIAMS and COLEMAN would hold that whether an activity is a governmental function depends upon whether

it is performed for the "common good of all". Justices FITZGERALD, KAVANAGH and LEVIN would hold that only those activities which are "of the essence of government" should be subject to immunity. A rehearing in the *Ross* case was granted March 25, 1983. Oral arguments were held August 16, 1983, and the decision is still pending.

The *Davis* and *Scott* cases, as well as the *Crosby* case decided shortly after the Supreme Court handed down the first *Ross* decision, convince this panel to find that the construction of the "super-sewer" is a governmental function and that the city is protected by governmental immunity. It is not certain that the pending *Ross* decision would be dispositive in this case, as plaintiffs claim. This Court has held that construction of the *Ross* sewer was not a governmental function, but that construction of the "super-sewer" is such a function because of its size and complexity. Therefore, even if the Supreme Court, in a majority opinion, were to agree with this Court that the project in *Ross* is not a governmental function, this Court's distinction between the two projects would remain.

Plaintiffs next argue that the trial court erred in finding that they had failed to plead facts constituting an intentional nuisance.

A defense of governmental immunity is not available against all claims of nuisance. The Michigan Supreme Court has split on the issue of what sort of nuisance allegations will avoid governmental immunity.

In *Rosario v City of Lansing,* 403 Mich 124; 268 NW2d 230 (1978), the Court split into three factions. See also *Gerzeski v Dep't of State Highways,* 403 Mich 149; 268 NW2d 525 (1978). The broadest exception was urged by Justices FITZGERALD, KAVANAGH and LEVIN, who argued that any claim of nuisance should avoid the immunity defense. Jus-

tices RYAN and COLEMAN preferred a very narrow exception, only for an "intruding nuisance", or "nuisance per se"—activities or conditions which are nuisances without regard to the care with which they are conducted or the circumstances under which they exist. The middle ground was held by Justices WILLIAMS and MOODY, who would create an immunity exception for intentional nuisances, but not for negligent nuisances. Because the three justices arguing for a broad exception and the WILLIAMS/MOODY faction agreed on an exception for intentional nuisances, we adopt this exception pending a more definitive ruling.[1] See *Ford v Detroit,* 91 Mich App 333, 336; 283 NW2d 739 (1979).

Thus, to avoid summary judgment on the ground of governmental immunity, plaintiffs' allegations must support a claim of intentional nuisance. Plaintiffs' allegations of intentional nuisance centered on the city's "failure" to fulfill its duties of supervision, inspection, prescription, delegation of duties, etc.[2] Although these allegations might describe negligent conduct, allegations of "failure"

[1] This Court has also found that a nuisance per se will avoid governmental immunity. *Pate v Dep't of Transportation,* 127 Mich App 130, 135; 339 NW2d 3 (1983). We agree since this narrow exception espoused by Justices RYAN and COLEMAN in *Rosario, supra,* also falls within the broad nuisance in fact exception urged by Justices FITZGERALD, KAVANAGH and LEVIN. in this case, however, plaintiff does not allege nuisance per se.

[2] Plaintiffs' allegations against the city with reference to nuisance were as follows:

"18. That defendant, City of Detroit, failed deliberately to properly prescribe and inspect and supervise and coordinate activities with regard to the tunneling and machinery used therein, to assure reasonable safety as to the activity thereof and to warn plaintiff of his peril or any hazards which were either known or in the exercise of due care, hazards which should have been known or ascertainable to or by the said defendant.

"19. That equally, said defendant failed deliberately to employ reasonably competent contractors and to perform the said work activity and discharge of the contractual obligation in the construction of the facility aforesaid.

are not sufficient for a claim of intentional nuisance. *Martin v Michigan,* 129 Mich App 100, 109-110; 341 NW2d 239 (1983); see *Rosario, supra,* p 143, fn 2. Furthermore, plaintiffs failed to allege that the city knew or must have known that its creation of the nuisance was substantially certain to result in harm to the plaintiffs. *Martin, supra,* p 109; *Keiswetter v Petoskey,* 124 Mich App 590, 597-598; 335 NW2d 94 (1983), *lv den* 417 Mich 1100.34 (1983); *Crosby, supra,* p 223; *Ford, supra,* p 336.

Affirmed.

---

"20. The said defendant failed deliberately to inspect and supervise and to prescribe for the sake of safety a reasonably cautious and prudent manner to perform the work activity aforesaid and to inspect and test the equipment used therein and to prescribe and to adopt safety programs and to operate said programs with reasonable safety so as to embrace precautions necessary for reasonable safeguards in the premises.

"21. That said defendant failed deliberately to refrain from delegating non-delegable duties of which duties included the safeguards and warnings which should have been applied and given aforesaid."