DAVIS v CITY OF DETROIT

Docket No. 78-3580. Submitted December 4, 1979, at Detroit.—Decided July 22, 1980.

Plaintiffs, Joe and Mattie Davis, brought suit for damages sustained by them because of injuries to Joe Davis while working on a construction project for defendant. Defendant moved for summary judgment based on the defense of governmental immunity. The Wayne Circuit Court, Patrick J. Duggan, J., denied defendant's motion. Defendant appeals by leave granted. Subsequently, plaintiffs moved to file an amended complaint to plead nuisance in fact, which the Court of Appeals granted. *Held:*

1. Due to the magnitude and public importance of defendant's sewer project, its construction constituted a governmental function, and, thus, defendant is immune from tort liability arising from the construction, and the trial judge should have granted defendant's motion for summary judgment as to plaintiffs' allegations of negligence.

2. Plaintiffs' having pled sufficient facts to allege an intentional nuisance necessitates reversal, and on remand the existence of a nuisance and whether or not it was intentionally created are questions for the trier of fact.

Affirmed in part, reversed in part.

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 25, 97 *et seq.*

72 Am Jur 2d, States, Territories, and Dependencies §§ 104-117.

Municipal immunity from liability for torts. 60 ALR2d 1198.

[2] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 31-34.

Municipal immunity from liability for torts. 60 ALR2d 1198.

[3] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 293-305.

58 Am Jur 2d, Nuisances § 141.

[4] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 192-194.

Municipal operation of sewage disposal plant as governmental or proprietary function, for purposes of tort liability. 57 ALR2d 1336.

D. F. Walsh, J., dissented. He would hold that the defendant is not entitled to the defense of governmental immunity. He would affirm.

### Opinion of the Court

1. Negligence — States — Governmental Immunity.

The basic guideline to be employed in determining whether an agency of the government is immune by statute from tort liability is whether the purpose, planning and carrying out of the activity, due to its unique character or governmental mandate, can be effectively accomplished only by the government; unless liability would be an unacceptable interference with government's ability to govern, activities that fall outside this perimeter, although performed by a governmental agency, are not governmental functions and therefore not immune.

2. Negligence — States — Governmental Immunity — Proprietary Functions — Pecuniary Profits.

The immunity of the state shall not apply to actions to recover for bodily injury or property damage arising out of the performance of a proprietary function, *i.e.,* any activity conducted primarily for the purpose of producing a pecuniary profit for the state, excluding any activity normally supported by taxes or fees.

3. Nuisance — Question of Fact — Trier of Fact — Trial.

Whether or not a particular thing or act creates a nuisance, and whether the nuisance was created intentionally or negligently, are questions of fact to be determined by the trier of fact.

### Dissent by D. F. Walsh, J.

4. Negligence — States — Governmental Function.

*The construction of even a vast and complex sewer system is not an activity which can be effectively accomplished only by the government, and, thus, does not entitle the government agency responsible for it to immunity from tort liability.*

*The Jaques Admiralty Law Offices, P.C.* (by *Robert E. Swickle),* for plaintiffs.

*Harvey, Kruse & Westen, P.C.* (by *Dane A. Lupo and Kirt B. DeVries),* for defendant.

Before: MacKENZIE, P.J., and V. J. BRENNAN and D. F. WALSH, JJ.

MacKENZIE, P.J. Plaintiff Joe Davis sustained an injury on March 3, 1973, while working in a tunnel under the Clinton River in Macomb County on a construction project involving defendant City of Detroit's sewer facilities. After plaintiffs filed suit for damages, defendant moved for summary judgment based on the defense of governmental immunity. On September 8, 1977, defendant's motion was denied by the trial court. Defendant appeals by leave granted on October 13, 1978.

Defendant argues that the trial court erred in denying summary judgment on the ground of governmental immunity. The statutory provision that deals with tort liability of a governmental agency, MCL 691.1407; MSA 3.996(107), provides in part:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function."

In *Beauchamp v Saginaw Twp,* 74 Mich App 44; 253 NW2d 355 (1977), a panel of this Court held that the construction of sewers as a public health measure is a governmental function. However, in light of the recent construction of the term "governmental function" by the Michigan Supreme Court in *Parker v Highland Park,* 404 Mich 183; 273 NW2d 413 (1978), and *Perry v Kalamazoo State Hospital,* 404 Mich 205; 273 NW2d 421 (1978), it is necessary to reexamine this issue.[1]

In *Parker,* the Michigan Supreme Court, in

---

[1] For the same reason, we will reconsider the decision of the Court in *Northrup v City of Jackson,* 273 Mich 20; 262 NW 641 (1935), that the operation of a sewage system is a governmental function.

three separate opinions, dealt with the construction of the term "governmental function". Justice FITZGERALD, with Justices KAVANAGH and LEVIN concurring, stated that the term was limited to activities that are "of essence to governing"; he was unable to conclude that the operation of a public hospital was a governmental function since it was not an activity that could be performed only by the government.

In a separate opinion, Justice MOODY reached the following conclusion:

"To delineate a complete and balanced definition of governmental function within a simplistic format would be presumptuous. However, as a basic guideline, the crux of the governmental essence test should be founded upon the inquiry whether the purpose, planning, and carrying out of the activity, due to its unique character or governmental mandate, can be effectively accomplished only by the government. Unless liability would be an unacceptable interference with government's ability to govern, activites that fall outside this perimeter, although performed by a government agency, are not governmental functions and therefore not immune." 404 Mich 183, 200.

Justice MOODY agreed that the operation of a public general hospital is not a governmental function. However, in *Perry,* he disagreed with Justices FITZGERALD, LEVIN, and KAVANAGH and concluded that the operation of a public mental hospital was a governmental function. He noted the pervasive role of the government in the mental health area and stated that mental hospitals perform a unique activity mandated by the Legislature. He did not find it determinative that private mental hospitals perform a similar function. Rather, he stressed that the number of private mental health facilities was inadequate to deal effectively with the sub-

stantial institutional needs of the public and to process probate and circuit court commitment proceedings. 404 Mich 205, 214.

Recently, in *Rubino v Sterling Heights,* 94 Mich App 494; 290 NW2d 43 (1979), a panel of this Court, relying on *Parker,* held that a municipal water system was not a governmental function. The Court reasoned that the public's demand for water could be met by the private sector; citizen participation in the activity was not mandatory; and potential tort liability could be taken into consideration as a cost of doing business. See also *Ross v Consumers Power Co,* 93 Mich App 687; 287 NW2d 319 (1979), where construction of a drain was held not to constitute a governmental function.

However, due to the magnitude and public importance of the sewer project in question, we believe its construction constituted a governmental function. The project was begun in 1962 as the result of a study done for the Inter-County Drain Committee representing the counties of Macomb, Monroe, Oakland, St. Clair, Washtenaw, and Wayne in Southeastern Michigan. It was recommended that the City of Detroit's sewage disposal project be expanded to cover the larger metropolitan area.

By 1966, increased pollution of the Clinton River prompted the Michigan Water Resources Commission (MWRC) to deny disposal permits. This directly affected Macomb County, which had previously dumped its effluent into the river, and the City of Detroit, as the river emptied into the Great Lakes upstream, polluting the city's raw water intake. Soon thereafter, the City of Detroit entered into a contract with Macomb County to provide sewage disposal with the express goals of serving

the public and enhancing the water quality of the Great Lakes.

The project was funded by Federal grants (55 percent), state grants (25 percent), and a bond issue by the City of Detroit (20 percent). It involved a total expenditure of $100,700,000 and was designed to handle the effluent of all six counties.

Like mental health, sewage treatment is an area subject to pervasive state regulation. See generally, MCL 46.171 *et seq.;* MSA 5.2767(1) *et seq.,* MCL 123.241 *et seq.;* MSA 5.2661 *et seq.,* MCL 323.151 *et seq.;* MSA 5.2769(81) *et seq.,* and MCL 325.151 *et seq.;* MSA 14.1008 *et seq.* Under those provisions, the Legislature has authorized local government units to own, acquire, construct, equip, operate, and maintain sewage treatment facilities, subject to inspection and certification by the state health commissioner. It is possible for local government units to grant franchises to private individuals to own and operate sewage treatment facilities, MCL 123.245; MSA 5.2665. However, the size of the project herein, in terms of cost, volume of effluent, and water pollution control, convinces us that it could not be effectively coordinated by a private individual or company in the best interests of the public.

Plaintiffs also argue construction of the project constituted a "proprietary function" such that defendant was not entitled to immunity pursuant to MCL 691.1413; MSA 3.996(113):

"The immunity of the state shall not apply to actions to recover for bodily injury or property damage arising out of the performance of a proprietary function as herein defined. Proprietary function shall mean any activity which is conducted primarily for the purpose of producing a pecuniary profit for the state, excluding,

however, any activity normally supported by taxes or fees."

Charges imposed by the City of Detroit herein are based upon the cost of the system and are used to pay current expenses of administration and operation, with the remainder to be applied toward principal and interest on bonds outstanding. No amount is permitted to leave the sewer system to be deposited in the city's general fund. It is also evident that, based on current charges, the city will be hard-pressed to recoup its initial investment. We are convinced that the primary purpose of the project is to deal with disposal problems while protecting the environment. In summary, plaintiffs have not persuaded us that defendant has derived a peculiar benefit from the construction of the sewers in question. See *Beauchamp, supra,* 74 Mich App 44, 52.

Finally, it must be determined whether our order of November 29, 1979, permitting plaintiffs to amend their complaint to plead nuisance in fact necessitates remand. To prevail, plaintiffs must plead sufficient facts to allege an intentional nuisance in fact. *Gerzeski v Dep't of State Highways,* 403 Mich 149; 268 NW2d 525 (1978), *Rosario v City of Lansing,* 403 Mich 124; 268 NW2d 230 (1978), *Affiliated FM Ins Co v Dep't of State Highways & Transportation,* 86 Mich App 203; 272 NW2d 239 (1978).[2]

We believe that remand is mandated due to our Supreme Court's determination that "whether or not the particular thing or act creates a nuisance"

[2] Although three members of the Supreme Court were of the opinion in *Rosario* and *Gerzeski* that the governmental immunity doctrine is inapplicable whenever a nuisance in fact is alleged, be it negligent or intentional, because they could not acquire a majority for this position, Justice MOODY's opinion adopting the more stringent "intentional nuisance" analysis became law.

and whether the nuisance was created intentionally or negligently, are questions of fact to be determined by the trier of fact. *Rosario, supra,* 403 Mich 124, 142; *Gerzeski, supra,* 403 Mich 149, 160.

In examining plaintiffs' amended complaint, we note that most of plaintiffs' allegations, that defendant failed to inspect, coordinate and supervise work activities, failed to provide safety standards and a safe work environment, and neglected to assure that employees would not be subjected to the use of hazardous tools and equipment, sound in negligence. See *Rosario, supra,* 403 Mich 124, 143. However, plaintiffs also allege that defendant deliberately engaged in construction activities involving the use of dangerous tools and equipment creating the alleged nuisance and failed, upon ascertaining the failure of the contractor to implement adequate safety precautions, to institute its own safety precautions. These allegations, implying that defendant had knowledge of the nuisance but failed to correct the situation, when liberally construed, are sufficient to withstand dismissal by accelerated judgment. However, plaintiffs must still prove at trial that the conditions alleged created a nuisance intentionally caused by defendant.

Therefore, the trial judge should have granted defendant's motion for summary judgment as to plaintiffs' allegations of negligence on the ground of governmental immunity. But plaintiffs may attempt to prove the existence of an intentional nuisance in fact as pled in their amended complaint.

Affirmed in part, reversed in part.

V. J. Brennan, J., concurred.

D. F. Walsh, J. *(dissenting).* For the reasons

stated in *Ross v Consumers Power Co,* 93 Mich App 687; 287 NW2d 319 (1979), I must respectfully dissent.

The construction of a sewer system, even one as vast and as complex as the one involved in this lawsuit, is not, in my judgment, an activity which "can be effectively accomplished only by the government". *Parker v Highland Park,* 404 Mich 183, 200; 273 NW2d 413 (1978). Many of the power and communication systems which service this nation and other industrial nations throughout the world, and which are larger and more complex than this sewer system, were constructed and are effectively maintained and operated by private, investor-owned, utility companies.

I would affirm the trial court's denial of defendant's motion for summary judgment and rule that the defendant is not entitled to the defense of governmental immunity under the facts of this case.