SCOTT v CITY OF DETROIT

Docket No. 48439. Submitted January 19, 1981, at Detroit.—Decided June 16, 1981. Leave to appeal applied for.

Bennie Scott, an employee of Corridor Constructors, was injured in 1971 while working on a sewer construction project. He brought an action for damages against the City of Detroit and against his employer's insurer, Employers Liability Insurance Company of Wisconsin. Scott alleged that the defendants were negligent in their inspection and supervision of the construction project. The Wayne Circuit Court, Irwin H. Burdick, J., granted summary judgment in favor of both defendants. Plaintiff appeals by leave granted. *Held:*

1. The sewer construction project in question was a governmental function for purposes of affording the City of Detroit governmental immunity from tort liability.

2. Plaintiff failed to plead specific, deliberate acts of the city sufficient to allege a nuisance within the nuisance exception to governmental immunity.

3. Plaintiff alleged that defendant Employers was negligent in its inspections of the premises. Employers' motion for summary judgment was granted on the basis of no genuine issue of material fact. There was, however, evidence of Employers' undertaking to make safety inspections and of Corridor's reliance on those inspections sufficient to raise a question of fact regarding the alleged negligence of Employers. Summary judgment on this basis was, therefore, improper.

Affirmed in part, reversed in part, and remanded.

CYNAR, J., concurs in the affirmance of the summary judgment in favor of the City of Detroit, but as to the claim against Employers, he concurs in the result only.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 224.

[3] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 310.

[4, 5, 8] 73 Am Jur 2d, Summary Judgment §§ 26, 27.

[6] 57 Am Jur 2d, Negligence § 34.
   75 Am Jur 2d, Trial § 389.

[7] 57 Am Jur 2d, Negligence § 37.

1. Torts — Governmental Immunity — Governmental Function.

   The construction of a comprehensive regional sewer system, because it must be publicly coordinated in light of its impact on neighboring communities in terms of pollution control and public safety, is a governmental function for purposes of governmental immunity from tort liability.

2. Torts — Governmental Immunity — Proprietary Function.

   A sewer construction project in which the city constructing it derives no peculiar benefit is not a proprietary function of the city for purposes of governmental immunity from tort liability.

3. Nuisance — Pleading — Governmental Immunity — Torts.

   A plaintiff must plead specific, deliberate acts by a governmental unit in order to satisfy the requirement that a nuisance must be of an intentional nature to come within the nuisance exception to governmental immunity from tort liability.

4. Judgments — Summary Judgment — Court Rules.

   A motion for summary judgment for failure to state a claim upon which relief can be granted tests the legal sufficiency of the claim as determined from the pleadings alone; every well-pled allegation in the complaint is assumed to be true and if the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify recovery the motion should be granted (GCR 1963, 117.2[1]).

5. Judgments — Summary Judgment — Court Rules.

   A summary judgment based upon no genuine issue of material fact requires that it be impossible for the claim asserted to be supported by evidence at trial (GCR 1963, 117.2[3]).

6. Negligence — Duty — Question of Law.

   Normally the issue of duty owed to a particular person is a question for the trial court; however, where the existence of a particular relationship between the parties determines the duty owed, and that relationship is not clear, the issue of duty may properly be given to the jury.

7. Negligence — Liability to Third Parties — Third Parties.

   One who undertakes to render services to another which he should recognize as necessary for the protection of a third person or his things is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking if (a) his failure to exercise reasonable care increases the risk of harm, or (b) he has undertaken to perform a duty owed by the other to the third

person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

8. NEGLIGENCE — SUMMARY JUDGMENT — INSURERS — NEGLIGENT INSPECTION.

Summary judgment is rarely appropriate in a case in which a plaintiff alleges negligent inspection by an insurer because negligence generally involves a question of fact; only where the facts are such that all reasonable people must draw the same conclusion is the question of negligence considered to be one of law.

*The Jaques Admiralty Law Offices, P.C.* (by *Robert E. Swickle*), for plaintiff.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Richard T. McClear* and *Joseph F. Lucas*), for the City of Detroit.

*Harvey, Kruse & Westen* (by *John A. Kruse, Michael F. Schmidt* and *Paul S. Koczkur*), for Employers Liability Insurance Company of Wisconsin.

Before: N. J. KAUFMAN, P.J., and M. J. KELLY and CYNAR, JJ.

N. J. KAUFMAN, P.J. Plaintiff appeals from orders of the Wayne County Circuit Court which granted summary judgment in favor of the City of Detroit (City) on February 4, 1977, and which granted summary judgment in favor of Employers Liability Insurance Company of Wisconsin (Employers) on November 3, 1977. The case is before this Court by leave granted.

On August 18, 1971, while plaintiff was working in the shaft area of an underground tunnel project, a number of steel pipes rolled off a flatcar, striking and injuring him. The flatcar in question did not have any siderails, its purpose being to

transport pipe and other material into the tunnel. This was essential, since with each day's tunneling progress it was necessary to extend the water, air and ventilation piping to the next area of tunneling activities. Plaintiff was employed by Corridor Constructors. Defendant Employers was the workers' compensation insurer of Corridor on the date of the accident. Plaintiff filed suit in May of 1974, wherein he alleged negligence on the part of both the City of Detroit and Employers in inspecting and supervising construction.

At the time of the accident, plaintiff was loading air pipes onto a flatcar at the base of the tunnel shaft. Pipes were lowered into the tunnel from the surface by a crane. The pipes were lowered in bundles of six. While the pipes were lowered they were strapped together at each end by a choker or cable with two rings onto which the hook on the crane snapped. Before the crane hook was detached from the pipes, wire was wrapped around each end of the bundle to keep it together and to prevent rolling.

The pipes were lowered by the crane onto a flatcar. After the pipe was lowered and the wire wrapped around each end, the choker cable had to be removed from each end of the bundle in order that the crane could reel in its line. When both ends of the choker cable had been cleared, a signal was given to the crane operator to raise the cable.

At the time of the accident, plaintiff was working at one end of the bundle of pipe and another Corridor employee was working on the other end. The bundle of pipe was lowered, then wrapped with wire, and then the plaintiff unsnapped his end of the choker cable. The accident happened when the Corridor employee working the other end of the bundle of pipe did not clear the choker

cable from his end before he signaled the crane operator to raise the line. Thus, when the crane line was reeled in, it was still attached to the end of the bundle of pipe opposite plaintiff. This raised the end of the pipes and dumped the pipes onto plaintiff.

Charles Lynch, the safety engineer in charge of Corridor's safety program, testified that representatives from both the City and Employers inspected the job site. Inspections were conducted only during the day. The transporting of pipe in which plaintiff was engaged when injured was carried on at night after the daytime mining operations had shut down.

James Jackson, Employer's representative, testified that he visited the offices of Corridor once or twice and met with the safety engineer, Charles Lynch. He testified that his visits were restricted to the offices of the job site except for one occasion on which he visited the area under which the tunnel was being excavated. He never entered the tunnel itself and never went to any of the tunnel shafts.

Under the terms of the construction contract between Corridor and the City, Corridor, the general contractor, had sole responsibility for the maintenance of safety conditions.

The tunneling activities in question were part of the construction of a comprehensive system of regional wastewater interceptors and treatment plants for the purposes of water pollution control in a six-county area of Southeastern Michigan. The construction and improvement of the system was financed by federal grant (75%), state grant (5%), and the sale of revenue bonds and revenues derived from users of the system both inside and outside the City of Detroit. The construction and

capital improvement of the system was accomplished at a cost of over 100 million dollars.

The first two issues raised by plaintiff concern the City of Detroit's immunity from tort liability under MCL 691.1407; MSA 3.996(107). Plaintiff challenges the grant of summary judgment in favor of the City on the grounds that (1) the sewer system is not a governmental function, since a private business could operate the system in question and (2) because the City of Detroit charges the users of a sewer system, said system is a proprietary rather than a governmental function and therefore not immune from tort liability.

For our resolution of these two issues, we rely on a recent opinion which addressed these same questions in the context of the same construction project. In *Davis v Detroit,* 98 Mich App 705; 296 NW2d 341 (1980), *lv den* 410 Mich 856 (1980), the majority of a panel of this Court analyzed the sewer system at issue in light of *Parker v Highland Park,* 404 Mich 183; 273 NW2d 413 (1978), and *Perry v Kalamazoo State Hospital,* 404 Mich 205; 273 NW2d 421 (1978), and held that:

"* * * due to the magnitude and public importance of the sewer project in question, we believe its construction constituted a governmental function." *Davis, supra,* 709.

While acknowledging that it would be possible for private individuals to own and operate sewage treatment facilities, the *Davis* Court went on to state that:

"* * * the size of the project herein, in terms of cost, volume of effluent, and water pollution control, convinces us that it could not be effectively coordinated by

a private individual or company in the best interests of the public." *Id.,* 710.

We agree.

The dissent of Judge WALSH in *Davis* focuses on the final factor in Justice MOODY's analysis in *Parker*—can the activity be effectively accomplished only by the government. Judge WALSH concludes, using power and communication systems as an analogue, that the project in question could be maintained by private utility companies. However, while in theory this massive wastewater project could be accomplished by an entity other than the government, we believe that to compare a sewage system to a utility ignores the substantial interdependence of communities on adequate sewage systems. If a community chooses to exist without gas or electrical services, that decision would have no impact on neighboring communities. But a decision not to dispose of wastewater through a publicly coordinated sewage system would have disastrous consequences for these same neighbors. For example, before the present system became operable, Macomb County disposed of its effluent in the river which emptied into the Great Lakes upstream from the City of Detroit, polluting that city's raw water intake.

It is our belief that the interests of public safety and pollution control mandate a coordinated system of sewage disposal as was undertaken in the instant case. We, therefore, conclude that the wastewater disposal project involved herein was a governmental function and that the City of Detroit is thus immune from suit.

In response to plaintiff's argument regarding the proprietary nature of the sewer project, the *Davis* Court stated:

"Charges imposed by the City of Detroit herein are based upon the cost of the system and are used to pay current expenses of administration and operation, with the remainder to be applied toward principal and interest on bonds outstanding. No amount is permitted to leave the sewer system to be deposited in the city's general fund. It is also evident that, based on current charges, the city will be hard-pressed to recoup its initial investment. We are convinced that the primary purpose of the project is to deal with disposal problems while protecting the environment. In summary, plaintiffs have not persuaded us that defendant has derived a peculiar benefit from the construction of the sewers in question." *Davis, supra,* 711. (Citations omitted.)

See also *Beauchamp v Saginaw Twp,* 74 Mich App 44, 52; 253 NW2d 355 (1977).

Plaintiff next argues that his complaint sufficiently alleged nuisance so that governmental immunity was inapplicable. We do not agree.

In an effort to come within the nuisance exception to governmental immunity, *Rosario v City of Lansing,* 403 Mich 124; 268 NW2d 230 (1978), plaintiff points to those portions of his complaint wherein it was alleged that there was a failure by the City to warn him of the possible peril to which he was subject.

In *Rosario,* the Supreme Court reversed a grant of summary judgment in favor of the defendant on the grounds of governmental immunity, holding that the plaintiff's allegations were sufficient to allege a nuisance in fact and that governmental immunity is not a defense to a claim properly alleging nuisance. However, in *Rosario,* two members of the five-justice majority wrote concurring opinions and, as a result, their analysis is decisive. The concurring analysis of Justice MOODY required that plaintiff plead specific, deliberate acts in order to satisfy the intent requirement of a nuisance

claim. Applying this analysis to the complaint in
*Rosario,* Justice MOODY concluded that the terms
"neglected" and "failed" alleged only negligent
activity; however, the term "refused" was deemed
sufficient to allege a deliberate act by government.

In *Davis v Detroit, supra,* most of the plaintiffs'
allegations, that the defendant failed to inspect,
coordinate and supervise work activities, failed to
provide safety standards and a safe work environ-
ment, and neglected to assure that employees
would not be subjected to the use of hazardous
tools and equipment, sounded in negligence. How-
ever, the *Davis* Court found that the plaintiffs'
allegation, that the defendant deliberately engaged
in construction activities involving the use of dan-
gerous tools and equipment creating the alleged
nuisance and, upon ascertaining the failure of the
contractor to implement adequate safety precau-
tions, failed to institute its own safety precautions,
implied that the defendant had knowledge of the
nuisance but failed to correct the situation. The
Court held that, when liberally construed, these
allegations were sufficient to withstand dismissal
by accelerated judgment. In the instant case, ap-
pellant alleged that defendant City of Detroit owed
him a variety of duties and, further, that such
duties were breached. No allegations of intentional
conduct were made. Therefore, appellant's com-
plaint did not sufficiently allege a nuisance and,
thus, did not come within an exception to govern-
mental immunity.

The final issue to be addressed in this appeal is
plaintiff's contention that a question of fact existed
as to the liability of defendant Employers for
negligent inspection.

Defendant Employers moved for summary judg-
ment under GCR 1963, 117.2(1)—failure to state a

claim upon which relief can be granted. However, it appears from the briefs filed on the motion and from the transcript of the hearing on the motion that the motion was argued and decided under GCR 1963, 117.2(3)—no genuine issue of material fact.

Had the motion proceeded under GCR 1963, 117.2(1) the motion should not have been denied. The test for granting a motion brought under this subsection was discussed in *Stewart v Troutt,* 73 Mich App 378, 383-384; 251 NW2d 594 (1977):

"A motion for summary judgment brought under GCR 1963, 117.2(1), merely tests the legal sufficiency of the claim as determined from the pleadings alone. * * * For the purposes of that motion, both at the trial and appellate levels, every well-pled allegation in the complaint is assumed to be true. * * * The test is whether the plaintiff's claim, on the pleadings, is so clearly unenforceable as a matter of law that no factual development can possibly justify the right to recovery."

Plaintiff's complaint alleges a cause of action against his employer's workers' compensation carrier for acts of negligence. This action was recognized prior to the 1972 amendment of MCL 418.131, 418.827; MSA 17.237(131), 17.237(827). The alleged injury occurred prior to the amendment. The amendment has been held to apply prospectively and thus does not bar the instant action. *Andrews v Ins Co of North America,* 60 Mich App 190; 230 NW2d 371 (1975). Therefore, under GCR 1963, 117.2(1) plaintiff's complaint could survive the motion for summary judgment.

Apparently the trial judge accepted the motion as one under GCR 1963, 117.2(3). This Court has held that when a motion for summary judgment brought under 117.2(1) is really testing the suffi-

ciency of facts the motion should proceed on the basis of 117.2(3) as long as neither party is misled. *Walker v Cahalan,* 97 Mich App 346, 355; 296 NW2d 18 (1980). The briefs presented in the instant case demonstrate that neither party was misled. Therefore, review by this Court is appropriate.

Before a summary judgment may properly be granted under 117.2(3), it must be impossible for the claim asserted to be supported by evidence at trial. *Walker v Cahalan, supra.* The plaintiff must submit to the court by affidavit, deposition or other proof a showing of the existence of issues of fact on the merits of the case, failing which plaintiff's case must fall. *Zimmerman v Stahlin,* 374 Mich 93, 96; 130 NW2d 915 (1964), *Walker v Cahalan, supra.*

Plaintiff's theory as against defendant Employers was that Employers had undertaken inspection of Corridor's safety procedures and had negligently failed to make a proper inspection and that Employers owed a duty to properly inspect. The appropriate focus under cases considering similar actions is upon the "duty" element. "Normally the issue of duty owed a particular person is a question for the trial court." *Ray v Transamerica Ins Co,* 46 Mich App 647, 654; 208 NW2d 610 (1973). However, where the existence of a particular relationship between the parties determines the duty owed, and that relationship is not clear, the issue of duty may properly be given to the jury. *Id.*

The rule in Michigan governing the duty of an insurer to properly inspect was stated in *Ray, supra,* 657, quoting from 2 Restatement Torts, 2d, § 324A, p 142 as follows:

"One who undertakes, gratuitously or for considera-

tion to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, *if*

"(a) his failure to exercise reasonable care increases the risk of harm, *or*

"(b) he has undertaken to perform a duty owed by the other to the third person, *or*

"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking." (Emphasis in *Ray.*)

Employers' representative, James Jackson, testified that he never inspected the tunnel site. If this were the only evidence concerning inspections, the grant of a summary judgment motion would be appropriate. However, Charles Lynch, Corridor's safety engineer, testified that several inspections were made by the insurance company. This conflicting testimony would normally present a question for the jury as to whether Employers had undertaken to furnish safety inspections which would give rise to a duty to use reasonable care on behalf of the plaintiff. Whether an insurance company has made an undertaking and whether there was sufficient reliance are generally questions of fact for the jury. *Andrews v Ins Co of North America, supra,* 197.

We recognize that the Michigan Supreme Court has very recently held that an insurer's inspection of an insured's premises for fire hazards does not, in itself, demonstrate an undertaking to render fire inspection and prevention services to the insured. *Smith v Allendale Mutual Ins Co,* 410 Mich 685; 303 NW2d 702 (1981). Under the facts of *Smith,* a majority of the Court found lacking the threshold requirement of an undertaking to render services to another and, therefore, found that no

jury question on the issue of negligent inspection had been presented. The decision in *Smith* does not, however, convince us to depart from the general rule that, since negligence involves a question of fact, summary judgment is rarely appropriate in such cases and that it is only where the facts are such that all reasonable people must draw the same conclusion that the question of negligence is considered to be one of law. *Normand v Thomas Theatre Corp,* 349 Mich 50; 84 NW2d 451 (1957), *Miller v Miller,* 373 Mich 519; 129 NW2d 885 (1964). We find that the threshold questions of an undertaking and reliance have been met in the instant case, Corridor having testified that it had only a *pro forma* safety program and relied on defendant Employers' recommendations in the area of safety. It is, therefore, our belief that summary judgment was not proper.

Relying upon the above-stated general rule, plaintiff argues that, based on the pleadings and the evidence presented, reasonable men could find that Employers was negligent in the performance of the inspection and, in particular, could find that Employers failed to establish appropriate safety standards for the maintenance of the flatcars, the improper maintenance of which occasioned plaintiff's injury. Plaintiff emphasizes that the issue of negligence is not whether Employers had the power to implement safety regulations, but whether it made any recommendations relating to the hazards of the absence of guardrails. In other words, plaintiff argues that the question is not whether Employers inspected the flatcars, but whether Employers was negligent in not inspecting the flatcars and making safety recommendations, expecially in view of Employers' awareness that Corridor was relying on its expertise.

We find plaintiff's argument on this issue persuasive. Reasonable minds could differ on the question of negligence based upon the pleadings and deposition evidence presented thus far. As such, a question of fact existed for the jury to determine and the trial court erred by granting summary judgment.

In conclusion, we hold that the trial court's grant of summary judgment for defendant City of Detroit on the ground of governmental immunity was proper. We further hold that plaintiff's allegations of nuisance were inadequate to withstand the City's motion for summary judgment on this issue. However, this case is remanded for trial in order to give plaintiff an opportunity to prove his allegation of negligent inspection on the part of defendant Employers.

Affirmed in part, reversed in part and remanded. No costs, a public question being involved. We do not retain jurisdiction.

CYNAR, J., affirms the grant of summary judgment for the defendant City of Detroit on the ground of governmental immunity. However, as to the remand concerning the claim against defendant Employers, he concurs in the result only.