CATENARO v CITY OF DETROIT

Docket No. 53634. Submitted December 1, 1981, at Detroit.—Decided
    April 23, 1982. Leave to appeal applied for.

Angelo Catenaro was an employee of an independent contractor
    which had contracted with the City of Detroit for the replace-
    ment of old cast iron water mains with new plastic mains.
    While working on this project, he allegedly sustained injuries
    to his right leg when the walls of a trench in which he was
    working collapsed. He and his wife brought an action against
    the City of Detroit in the Wayne Circuit Court alleging breach
    of a duty to provide a safe place to work and failure to inspect
    and supervise work activities. The complaint alleged gross
    negligence, strict liability and maintenance of an inherently
    dangerous work activity. The court, Michael L. Stacey, J.,
    granted summary judgment based on governmental immunity.
    Plaintiffs appealed. *Held:*

The operation of a municipal water system, including the
    replacement of water mains, is not a governmental function
    which will relieve a city from tort liability on the ground of
    governmental immunity because supplying public water is not
    an activity which due to its unique character can only be
    accomplished by government. The public demand for water can
    be met by privately owned companies or associations, such
    systems can be supported by fees charged to users and their
    maintenance does not necessarily require tax funding. Citizen
    participation in a government operated water system is not
    mandatory. A property owner may use a private well and is not
    required to hook up to a public water supply and a water
    distribution system is of such nature that potential liability
    may be taken into consideration as a cost of doing business.

    Reversed.

1. GOVERNMENTAL IMMUNITY — GOVERNMENTAL FUNCTION.
    The crux of the governmental essence test for deciding whether a
        governmental agency is immune by statute from liability for a

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 31
    *et seq.*

tort should be an inquiry whether the purpose, planning and carrying out of the activity, due to its unique character or governmental mandate, can be effectively accomplished only by government; unless liability would be an unacceptable interference with the government's ability to govern, activities that fall outside the guideline, although performed by a governmental agency, are not governmental functions and therefore the agency is not immune.

2. GOVERNMENTAL IMMUNITY — CITY WATER SUPPLIES — GOVERNMENTAL FUNCTIONS.

The operation of a municipal water system, including the replacement of water mains, is not a governmental function which will relieve a city from tort liability on the ground of governmental immunity because supplying public water is not an activity which due to its unique character can only be accomplished by government; the public demand for water can be met by privately owned companies or associations, such systems can be supported by fees charged to users and their maintenance does not necessarily require tax funding; citizen participation in a government operated water system is not mandatory; a property owner may use a private well and is not required to hook up to a public water supply and a water distribution system is of such nature that potential liability may be taken into consideration as a cost of doing business.

*The Jaques Admiralty Law Firm, P.C.* (by *Robert E. Swickle*), for plaintiff.

*Kerr, Russell & Weber* (by *Christine E. Moore*), for defendant.

Before: DANHOF, C.J., and J. H. GILLIS and BRONSON, JJ.

PER CURIAM. Plaintiffs appeal as of right the trial court's order granting summary judgment to defendant on the basis of governmental immunity.

Plaintiff Angelo Catenaro was an employee of an independent contractor which had contracted with defendant City of Detroit for the replacement of old cast iron water mains with new plastic mains.

While working on this project, plaintiff allegedly sustained injuries to his right leg when the walls of a trench in which he was working collapsed.

On September 13, 1976, plaintiffs filed this action alleging breach of a duty to provide a safe place to work and failure to inspect and supervise work activities. The complaint alleged gross negligence, strict liability and maintenance of an inherently dangerous work activity. On May 14, 1980, defendant filed a motion for summary judgment under GCR 1963, 117.2(1), asserting that plaintiffs' claim was barred by governmental immunity. MCL 691.1407; MSA 3.996(107). Defendant's motion was granted by order dated August 29, 1980. Plaintiffs appeal as of right.

MCL 691.1407; MSA 3.996(107) provides:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed."

In the cases of *Parker v City of Highland Park,* 404 Mich 183; 273 NW2d 413 (1978), and *Perry v Kalamazoo State Hospital,* 404 Mich 205; 273 NW2d 421 (1978), the Supreme Court in four-to-three decisions announced a new test for determining when a governmental agency is engaged in the exercise or discharge of a governmental function. This modern analysis limits the protective shield of immunity to those activities which are *sui generis* governmental—of essence to governing.

Justice MOODY's specific application of the test has been most often applied in subsequent deci-

sions. Writing separately in *Parker,* Justice MOODY stated:

"To delineate a complete and balanced definition of governmental function within a simplistic format would be presumptuous. However, as a basic guideline, the crux of the governmental essence test should be founded upon the inquiry whether the purpose, planning and carrying out of the activity, due to its unique character or governmental mandate, can be effectively accomplished only by the government. Unless liability would be an unacceptable interference with government's ability to govern, activities that fall outside this perimeter, although performed by a government agency, are not governmental functions and therefore not immune." 404 Mich 183, 200.

Several panels of this Court have applied this standard in the context of government operated water or sewer systems. In *Rubino v Sterling Heights,* 94 Mich App 494; 290 NW2d 43 (1979), we held that the operation of a municipal water system was not a governmental function, noting the following factors:

"Since the government is not the only entity involved in supplying the public with drinking water, it is not an operation that can be effectively accomplished only by the government. The public's demand for water is additionally met by various privately owned companies, property owners' associations, and other entities. The existence of privately run water distribution systems indicates that their maintenance does not necessarily require tax funding; such systems can be supported by the fees charged to users.

"Further, it is significant that citizen participation in a government operated water system is not mandatory. A property owner already receiving water from a private well is not required to hook up to an available public water supply.

"Finally, tort liability does not result in an impermissible interference with the government's ability to govern. A water distribution system is of such nature that potential liability may be taken into consideration as a cost of doing business." 94 Mich App 494, 498-499.

In *Ross v Consumers Power Co,* 93 Mich App 687; 287 NW2d 319 (1979), *lv gtd* 408 Mich 959 (1980), we found that construction of a drain was not an activity which could be effectively accomplished only by the government and was therefore not a governmental function.

Defendant in the present case argues that the water main replacement project was located in a low income and low housing value neighborhood and that the project could only be effectively accomplished by the government because the residents were unable to bear the cost. Defendant also notes that a large portion of the project was funded by state and federal monies. However, it does not appear that the financial advantages of government operated services should be of overriding consideration. In *Churchill v Regents of University of Michigan,* 97 Mich App 463; 296 NW2d 75 (1980), the Court recognized that, from an economic standpoint, the operation of a medical school could, perhaps, only be accomplished by the government. Nonetheless, such activity was found to be outside the scope of governmental immunity. And in *Ross, supra,* we noted that the analysis does not turn on whether the government may be more easily able to accomplish the task.

In practical terms, we believe the replacement of the water mains could have been effectively accomplished through the private sector. Even if this is a low income area (which plaintiffs dispute), the project could have been completed without governmental participation, although the ultimate pay-

ment of water charges may have been possible only through financial assistance to the residents.

It does not appear that imposing tort liability would result in impermissible interference with the city's ability to govern. The construction project was undertaken as a service to the residents of the city. The cost of potential tort liability could be taken into consideration as a cost of doing business, either through increased charges to consumers or through insurance. See *Rubino v Sterling Heights, supra,* 499.

Defendant urges us to follow the decision in *Davis v Detroit,* 98 Mich App 705; 296 NW2d 341 (1980), which held the construction of a sewer project to be a governmental function. Davis involved a $100,700,000 project which was designed to handle the effluent of six counties. Finding that the primary purpose of the project was to deal with disposal problems while protecting the environment, we stated:

"[T]he size of the project herein, in terms of cost, volume of effluent, and water pollution control, convinces us that it could not be effectively coordinated by a private individual or company in the best interests of the public." 98 Mich App 705, 710.

The *Davis* decision was relied on in *Scott v Detroit,* 107 Mich App 194; 309 NW2d 201 (1981), which also found the construction of a sewer project to constitute a governmental function.

*Davis* and *Scott* are distinguishable. As noted in *Scott,* the construction and operation of a sewer system requires often complex coordination with neighboring communities and has a significant environmental impact on surrounding areas. The concerns of public safety and pollution control and problems of coordinating activities with surround-

ing communities are not present in the case before us.

The trial judge erred in granting summary judgment to defendant.

Reversed and remanded.