DISAPPEARING LAKES ASSOCIATION v DEPARTMENT OF
NATURAL RESOURCES

Docket Nos. 59191, 59640. Submitted July 13, 1982, at Lansing.—
Decided November 3, 1982. Leave to appeal granted, 417 Mich
—.

Plaintiffs, Disappearing Lakes Association and others, brought an
action against the State of Michigan and the Department of
Natural Resources in the Court of Claims. Plaintiffs also
brought an action against Oakland County and others in the
Oakland Circuit Court. Both actions were for damages for
injuries sustained by plaintiff property owners as a result of
drops in the water levels of two lakes near the plaintiffs'
property. The actions were consolidated in the Court of Claims.
Plaintiffs' complaint against the Department of Natural Re-
sources and the state alleged negligent, grossly negligent, or
intentional creation of a nuisance in issuing permits for dredg-
ing canals near plaintiffs' property, which dredging resulted in
the lowering of the water levels in the lakes. Vidosh Brothers,
Inc., intervened as a plaintiff. The Court of Claims, Frederick C.
Ziem, J., granted summary judgment for the state and the
Department of Natural Resources based on governmental im-
munity. Plaintiffs and intervening plaintiff appealed. The ap-
peals were consolidated. *Held:*

1. Governmental immunity extends to the state's issuance of
licenses or permits, such as dredging permits.

2. Plaintiffs' claims of taking property without due process of
law and of departmental activity outside the scope of its au-
thority and therefore alleging a right to equitable relief were
not preserved for appeal.

Affirmed.

CYNAR, J., concurred in the result only.

1. GOVERNMENTAL IMMUNITY — LICENSES — TORTS.

Governmental immunity for tort liability extends to the damages
resulting from the state's issuance of licenses.

REFERENCES FOR POINTS IN HEADNOTES
[1] 72 Am Jur 2d, States, Territories, and Dependencies § 99 *et seq.*
[2] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*

2. APPEAL — PRESERVING QUESTION.

An issue not raised at trial is not preserved for appeal unless the claim is necessary to a proper determination of the case, involves a question of law for which all facts have been presented, or a manifest injustice would result.

*Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, P.C.* (by *Barry P. Waldman*), for plaintiffs.

*Stewart, O'Reilly, Cornell, Lascoe & Rancicio, P.C.* (by *Ronald A. Cornell*), for intervening plaintiff-appellant Vidosh Brothers.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, and *Terrence P. Grady* and *Theodore E. Hughes*, Assistants Attorney General, for defendant.

Before: ALLEN, P.J., and CYNAR and R. B. MARTIN,* JJ.

R. B. MARTIN, J. Plaintiffs commenced an action against the State of Michigan and the Department of Natural Resources in the Court of Claims. They commenced another action against the township, the county, and other municipal boards and individuals in circuit court in Oakland County. We are here concerned solely with the State of Michigan and the Department of Natural Resources. We will refer to them as the defendant, as the state acted through its department.

In August, 1979, the defendant moved to dismiss or alternatively for a summary judgment on the grounds plaintiffs did not state a claim on which relief could be granted and on the additional grounds that the defendant was protected by governmental immunity. The circuit judge sitting in the Court of Claims denied the motion.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

On May 14, 1980, plaintiff moved to join the two actions. On June 12, 1980, the defendant moved for accelerated judgment on several grounds. One was that the complaint failed to plead facts establishing negligence, nuisance, or violation of any statute. Another was the defense of governmental immunity from liability in tort, and plaintiff's failure to plead facts showing any recognized exception to governmental immunity.

The same circuit judge heard these motions on October 29, 1980, and on January 6, 1981, he filed an opinion and order granting the motion to join and reserving to the defendant the right to raise and argue the motion for accelerated or summary judgment before the circuit court.

On April 17, 1981, defendant filed a motion for accelerated judgment and a motion for summary judgment. These were heard by an Oakland County circuit judge on July 2 and July 16. The judge denied the motion for accelerated judgment and granted the motion for summary judgment on the basis of governmental immunity. He found the plaintiffs had not pled facts sufficient to establish the nuisance exception to the doctrine of governmental immunity. This appeal followed.

We look at the complaint against the state and its department. Count I is entitled "Nuisance". It alleges: Plaintiffs own property around Square Lake and Little Square Lake in Oakland County and suffered economic loss because of the defendant's conduct. From June, 1966, to 1976, the department issued permits for dredging canals south of Lake Orion and immediately north of plaintiffs' property. By reasons of the issuance of such permits, dredging occurred. The dredging caused a lowering of the water level in plaintiffs' two lakes. The department did not carry out the

mandates of the statute in issuing the permits. It further states:

"14. That the defendants' issuance of the permits to dredge negligently and/or intentionally created a nuisance by causing the waters of Square Lake and Little Square Lake to recede, and that said conditions constitute a nuisance per se or a public nuisance.

"15. That as a direct and proximate result of the aforesaid creation of a nuisance by defendant the ground water flow feeding Square Lake and Little Square Lake was disrupted, causing the water of said lakes to recede.

"16. That as a direct and proximate consequence of the creation of a nuisance by the above-named defendant, plaintiff and the class they represent have suffered and will continue to suffer personal injury, economic loss, property damage and depravation of use and enjoyment of property impairment of physical health and mental distress."

Count II set forth nine areas where plaintiffs claim the defendant was negligent or grossly negligent in actions leading to the issuance of the permit.

The first question is whether or not defendant is protected by governmental immunity. This doctrine has been buffeted about by the courts and the Legislature, but still stands firm in some areas as far as the Legislature is concerned. MCL 691.1407; MSA 3.996(107):

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function, except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed."

The Michigan Supreme Court has divided on what may be defined as exercising or discharging a governmental function. *Parker v City of Highland Park,* 404 Mich 183; 273 NW2d 413 (1978), and *Perry v Kalamazoo State Hospital,* 404 Mich 205; 273 NW2d 421 (1978). We hold the issuance of a permit to channel into navigable waters is a governmental function under *all* the definitions. A look at the purpose of the statute giving the department the authority to grant permits clearly indicates the power is "of essence to governing". It is the type of activity governments assume when public waters and areas are exposed to dangers and controls must be exercised for the benefit of the whole. Certainly, private individuals or corporations would not have the interest, power, or ability to issue or deny issuance of permits with the public welfare in mind. It is a process only the government can effectively accomplish. If channeling must be controlled for the common good, it must be done by the government and not by private individuals. This activity is protected by the doctrine of governmental immunity.

Do the facts here create an exception to the doctrine? Appellants claim they have alleged sufficient facts to make out an intentional nuisance, thus taking the case out of the protection of governmental immunity.

The nuisance exception to the immunity doctrine is a morass. It is a word chosen by courts to avoid the harshness of some legal principles without really casting those principles out. Recall what attractive nuisances did to the law of negligence in cases involving injured children. Trace the evolution of nuisance as a growing defense to governmental immunity.

The most recent cases dealing with nuisance as

a defense to governmental immunity are: *Rosario v City of Lansing,* 403 Mich 124; 268 NW2d 230 (1978); *Gerzeski v Dep't of State Highways,* 403 Mich 149; 268 NW2d 525 (1978); *Stemen v Coffman,* 92 Mich App 595; 285 NW2d 305 (1979); *Shunk v Michigan,* 97 Mich App 626; 296 NW2d 129 (1980); *Davis v Detroit,* 98 Mich App 705; 296 NW2d 341 (1980); *Hoeppner v Dep't of Labor,* 104 Mich App 334; 304 NW2d 841 (1981).

*Rosario* and *Gerzeski* are basic to any understanding of Michigan's position on nuisance. In those two cases, Justices FITZGERALD, KAVANAGH, and LEVIN held nuisances per se and nuisances in fact were both defenses to governmental immunity. Justices MOODY and WILLIAMS felt nuisances per se were a defense. However, in their opinion, nuisances in fact could be divided into two categories, negligently created nuisances and intentionally created nuisances. Only the latter were effective to bar the defense of governmental immunity. As Justice MOODY said in *Rosario v City of Lansing, supra,* p 142:

"In order to find an intentional nuisance, the trier of fact must decide based upon the evidence presented that the governmental agency intended to bring about the conditions which are in fact found to be a nuisance."

Justices RYAN and COLEMAN dissented, finding only nuisances per se and intruding nuisances eliminated governmental immunity as a defense.

In *Stemen, supra,* the city gave a permit, a certificate of compliance, to allow the use of a building as an apartment building. A tenant was seriously burned in a fire and claimed the city had permitted a nuisance by letting the landlord rent

to tenants where the building was unsafe. This Court said:

"We disagree. 'Liability for damage caused by a nuisance turns upon whether the defendant was in control, either through ownership or otherwise.' 58 Am Jur 2d, Nuisances, § 49, p 616. We have found no authority imposing liability for damage caused by a nuisance where the defendant has not either created the nuisance, owned or controlled the property from which the nuisance arose, or employed another to do work which he knows is likely to create a nuisance. The city's relationship with the property alleged to constitute a nuisance in this case falls under none of these headings; indeed, it is far more attenuated. To hold the city liable under the 'nuisance exception' in this case would stretch the concept of liability for nuisance beyond all recognition." 92 Mich App 598.

*Shunk, supra,* seems to arrive at almost the exact opposite result. There the employees of Michigan Chemical Company alleged the state knew or should have known PBB created serious and immediate hazards and the state wilfully and intentionally failed to act against the employers as required by statute to prevent injury to the plaintiffs. This Court held the alleging of an intentional tort was enough to evade the defense of governmental immunity.

In *Davis v Detroit,* a worker was injured while laboring on a large sewer project. The Court of Appeals dealt mainly with the question of whether or not the multi-municipality sewer project was a governmental function. It also ruled that the allegation that the defendant deliberately engaged in activities using dangerous tools and knowingly continued without adequate safety precautions was sufficient to allege an intentional nuisance so that the matter would have to be tried.

In *Hoeppner, supra,* the injured workman claimed the state inspector was arbitrary, capricious, neglectful, and wantonly and wilfully negligent in inspecting, which caused the plaintiff to be injured. This Court ruled the inspections were governmental functions and there was no allegation of an intentional tort. There was no actual knowledge of danger or acting in intentional disregard of any danger.

We believe the complaint against the state and its department does not allege sufficient facts to escape the defense of governmental immunity and the trial judge must be affirmed.

In both *Rosario* and *Gerzeski,* the governmental unit being sued had been and was in actual control of the project which resulted in injury. In *Rosario,* the government owned, put in, and controlled the open drain. In *Gerzeski,* the highway department built, modified, owned, and controlled the borrow pit. This was an important element in the conclusion of the trier of fact in finding the government created either a simple nuisance in fact or an intentional nuisance.

In *Davis,* the city owned and was building the sewer that resulted in the injury.

*Stemen* is more similar to our case. There, a city housing inspector gave permission for a building to be inhabited. The city did not own or control the premises directly. In our case, if no permit had been issued, no dredging would have been done and no injury would have resulted. In *Stemen,* if no permit had been granted, tenants would not have been able to maintain their residences and no injury would have resulted. The actual ownership and control of the property remained with someone other than the city.

See also *Coburn v Public Service Comm,* 104

Mich App 322; 304 NW2d 570 (1981). There a child was injured by a collision between a car and a freight train. The plaintiff claimed the commission had permitted or required the company operating the train to maintain a nuisance. This Court found that the commission was not liable for permitting another person to maintain a nuisance as nuisance liability extends only to the party that owns or controls the property.

*Shunk* does appear to this Court to have an opposite result from that reached in *Stemen*. It may perhaps be differentiated in that in *Shunk* the statute (MCL 408.1031; MSA 17.50[31]) did not just give the involved department general power to protect the workmen but directly and plainly required the department to do specific things when it found imminent danger existed in a work place. The department had to notify the employer and employees of the danger. It required the department to *immediately* recommend that an order be issued to avoid the danger. The order would require red-tagging dangerous machinery and processes and prohibit the presence of people in locations where imminent danger existed. Further specific directions were given. They are much more explicit and detailed than the powers granted to the Department of Natural Resources in our case.

It has been argued that the department did "control" the creation of the nuisance by granting the various permits to dredge. Certainly if the permits had not been granted, no dredging would have resulted and, with no dredging, no loss of lake level to the plaintiffs.

We believe the Supreme Court in *Rosario* and *Gerzeski* meant more by control than that. Certainly, this Court in *Stemen* meant more. Nearly every permit made by a government agent in the

exercise of statutory discretion results in some affirmative action being taken. These affirmative actions can have side results unthought of or unforeseeable. These results can be labeled "nuisances" and the granting authority can be sued unless governmental immunity's wings are broad enough to protect them.

A Secretary of State representative can return a driver's license to someone who has had two convictions for driving under the influence. The agent intends to permit the licensee to drive on public highways. The licensee returns to his old habits and drives while under the influence. He is a dangerous nuisance on the highways. He kills an innocent pedestrian. Is the state responsible because of the creation of an intentional nuisance?

A township building inspector issues a building permit for someone to build a home in the country. The inspector intends a house to be built. The landowner digs out his basement in such a way that the neighbor's foundation is exposed by shifting sand, and the neighbor's house caves in or is flooded by a rain. Is the township liable because they created an intentional nuisance?

A family with 12 children gets a permit to build on a small city lot. The city intends for a home for 12 children to be built. The house is built. The family moves in, and they are loud, boisterous, profane, and noisy. This is an ear-splitting, peace-disturbing nuisance to the neighbors. Is it an intentional nuisance such that the neighbors can recover from the city?

The state licenses so many hundreds of doctors, dentists, and lawyers each year. By the law of averages, some of them will be less competent than average and commit malpractice. They will be dangerous nuisances. When one is a dangerous

nuisance and injures a patient or client, will the state be liable because it intentionally permitted the doctor, dentist, or lawyer to practice in this state?

The list of illustrations can be endless. There are licensed but still sometimes incompetent and therefore dangerous druggists, plumbers, contractors, and what have you. Is the licensing governmental agency responsible for all the injury caused by the licensee?

If there is a shred of protection left in the umbrella of governmental immunity, it should protect the state and its agency in this matter. There is no question but that the state granted permits to dredge. They expected channels to be built. It is not alleged and pleaded that the state intended the plaintiffs' lake levels be lowered. It is not alleged and pleaded that the state owned the land, owned the dredging equipment, operated the dredging equipment or in any way controlled the actual dredging except as it exercised the discretionary power to grant or refuse to grant permits to dredge. If governmental immunity is removed under such circumstances, it should be removed by the Legislature and not by this Court.

Appellants further claim the state by its actions took plaintiffs' property without due process of law. This claim was not in the complaint before the trial court and was not noted by the trial court and cannot be considered now. *Szidik v Podsiadlo,* 109 Mich App 446; 311 NW2d 386 (1981). The same can be said of plaintiffs' present claim relative to the defendant's actions falling outside the scope of the agency authority and plaintiffs' seeking of equitable relief. In addition, the plaintiffs have asked for no equitable relief but solely for money damages.

We realize that, if plaintiffs' complaint be true, they have been seriously damaged. Certainly, they are in no way at fault. So, it seems someone should respond to them with damages. In law, the one responsible should be the one who actually, directly causes the injury: the drunk driver, the incompetent professional, the bungling contractor, the dredger and his employer. The motor vehicle statute specifically makes the owner responsible for the acts of any driver he permits behind the wheel. However, this owner liability is not a common-law one applying to all torts arising from the use of personalty. If a golfer loans friend A his golf clubs and equipment and friend A goes to the course and indiscriminately flails away in such a manner as to become a dangerous nuisance, surely, the owner of the equipment is not liable for injury caused unless he knew or should reasonably have known that A would create such a dangerous nuisance by his activities. The complaint in this case nowhere alleges that the defendant knew or should have known the issuing of a permit to dredge at one lake would cause the water of two other lakes to recede. Plaintiffs do allege the "issuance of the permits to dredge negligently and/or intentionally created a nuisance by causing the waters of Square Lake * * * to recede, and that said condition constitutes a nuisance per se or a public nuisance". We believe this is a conclusive allegation and insufficient for plaintiffs' purposes.

Affirmed.

CYNAR, J., concurs in result only.